**CHEROKEE TOBACCO & CANDY COMPANY, Plaintiff-Appellant,**

v.

**CIVIL RIGHTS ENFORCEMENT AGENCY OF the CITY OF ST. LOUIS, Missouri and Debra Ulatoski, Defendants-Respondents.**

**No. 45931.**

Missouri Court of Appeals, Eastern District, Division One.

Dec. 27, 1983.

Mark F. Haywood, St. Louis, for plaintiff-appellant.

Judith A. Ronzio, St. Louis, for defendants-respondents.

SIMON, Presiding Judge.

Cherokee Tobacco & Candy Company (Cherokee) appeals from a judgment of the Circuit Court of the City of St. Louis affirming a decision of the Civil Rights Enforcement Agency of the City of St. Louis that Cherokee had violated the sex discrimination provisions of the City of St. Louis Ordinance No. 57173 and Title VII of the Civil Rights Act of 1964. The action, instituted by Debra Ulatoski, was based upon Cherokee's alleged failure to hire her due to her sex. The Agency, finding for Ulatoski, ordered Cherokee to institute an affirmative action plan reflecting legislative and decisional civil rights law and to pay Ulatoski $6,000 as back pay from February 18, 1980 through September 22, 1980.

Cherokee, on appeal, contends the trial court erred by affirming the Agency's finding of sex discrimination and damage award in that neither was based upon competent and substantial evidence on the record as a whole. We affirm the finding of discrimination but remand as to the damage award.

On review, we shall not reweigh the evidence, but shall consider the evidence in its entirety and its reasonable inferences in a light most favorable to the Agency's decision. *County of St. Louis v. Brooks,* 614 S.W.2d 283 (Mo.App.1981). Ulatoski, an employee of Accountempts, was assigned to Cherokee on August 6, 1979. Accountemps is a temporary employment service specializing in bookkeeping and data processing personnel. Initially, Ulatoski was assigned to take phone orders on a computer terminal but later performed bookkeeping services. In October, 1979, Ulatoski was asked by Cherokee's controller, Jensen, if she would be interested in becoming a permanent employee of Cherokee. Ulatoski indicated she would. In October, 1979, Cherokee notified Accountemps that it was interested in converting Ulatoski from an Accountemps employee to a permanent employee of Cherokee. According to procedure, Accountemps made a notation in its

records initiating the 720 billable hour conversion period. According to Accountemps, when clients wish to permanently hire employees of Accountemps, they are to notify Accountemps of such desire. Following the notification, the employee must work 720 billable hours for the client before becoming a permanent employee of the client. Alternatively, the client can pay a fee, thus eliminating the necessity of the 720 billable hours. Ulatoski completed an employment application with Cherokee with the understanding she was being considered for the assistant bookkeeper position. Under the 720 billable hour rule, Ulatoski was eligible for permanent employment with Cherokee on February 15, 1980.

In January, 1980, Ulatoski learned she was pregnant, told Jensen and in turn was told she would not be hired because of her pregnancy. Employees of Cherokee also testified Jensen informed them that Ulatoski had not been asked to remain due to her pregnancy. Ulatoski's last day of employment at Cherokee as an employee of Accountemps was February 15, 1980. In early February, 1980, Cherokee ran newspaper advertisements for the position for which Ulatoski had applied, and on February 25, 1980, hired someone else. The rate of pay was fixed at $5.00 per hour.

Cherokee's first point contends error in the finding of sex discrimination in violation of § 706 of the Civil Rights Act of 1964 and § 9 of St. Louis City Ordinance No. 57173. Our review of this contention is the same as that of a circuit court. *Jarrett v. Hill*, 648 S.W.2d 170, 172 (Mo.App.1983). Accordingly, the applicable scope of judicial review is stated in § 536.140 RSMo 1978. Our review focuses on whether the Agency's finding is supported by "competent and substantial evidence on the whole record." *See,* § 536.140.2(3) RSMo 1978.

Section 703(a)(1) of the Civil Rights Act of 1964 provides, in pertinent part:

"It shall be an unlawful employment practice for an employer ... to fail or refuse to hire ... any individual ...

because of such individual's ... sex ...."

Section 9(a)(1) of the ordinance provides, in pertinent part:

"It shall be an unlawful employment practice for an employer to fail or refuse to hire ... any individual ... because of ... sex,...."

■ We conclude that the Agency's decision is supported by substantial and competent evidence and affirm the finding of sex discrimination in Cherokee's failure to hire Ulatoski. *See, General Motors v. Fair Employment, Etc.,* 574 S.W.2d 394 (Mo. banc 1978).

Cherokee, in its second point, contends the back pay award is not supported by substantial and competent evidence. We agree. The evidence indicates the person hired for the position was paid $5.00 per hour. The Agency awarded Ulatoski back pay at a rate of $200 per week for thirty weeks or $6,000.

■ The record does not show how long Ulatoski would have been able to work during her pregnancy or the date when the baby was delivered. Further, the record indicates that Ulatoski worked as an employee of Accountemps at Mac-Fab Products in April and May of 1980 for a total of 56½ hours, but does not indicate the amount she earned. We find the evidence does not support the award.

Accordingly, we affirm the finding of discrimination, but remand to the commission for further proceedings as to the award of back pay.

Affirmed in part; reversed and remanded in part.

STEPHAN and KAROHL, JJ., concur.