365 S.E.2d 251

**FRANK'S SHOE STORE**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Kathy Varney.**

**No. 16913.**

Supreme Court of Appeals of West Virginia.

July 10, 1986.

Dissenting and Concurring Opinion Sept. 16, 1986.

James W. St. Clair, Marshall and St. Clair, Huntington, for appellants.

Charles G. Brown, Atty. Gen., Emily A. Spieler, Deputy Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

This case is before this Court upon appeal pursuant to *W. Va. Code*, 29A–6–1 [1964], part of the State Administrative Procedures Act. It arises from the final order of the Circuit Court of Cabell County wherein the trial court reversed the findings of the West Virginia Human Rights Commission (hereinafter "Commission") which had determined that the appellee was guilty of an unlawful discriminatory practice under the West Virginia Human Rights Act, *W. Va. Code*, 5–11–1, *et seq.*, as amended. This Court has before it the petition for appeal, all matters of record and the briefs of counsel.

Appellants are the West Virginia Human Rights Commission and Kathy Varney. The Commission is the state administrative agency charged with enforcement of the West Virginia Human Rights Act. Mrs. Varney is the aggrieved former employee of Frank's Shoe Store.

Appellee is Frank's Shoe Store, a locally owned and operated business in Huntington, West Virginia.

I

The appellant, Kathy Varney, began working for the appellee in June of 1975. Her job consisted of a variety of duties including: bookkeeping, working as a cashier and selling shoes. In May, 1976, the appellant learned that she was pregnant. She notified the appellee of her condition and requested that she be permitted to continue working, both before and after the birth of her child. The appellee agreed to this request.

In November, 1976, the appellee removed Mrs. Varney from the sales force and reduced her duties to minor record keeping and temporary cashier. This limitation correspondingly reduced the appellant's work week by one full day: from five days to four days per week. A month later, the appellant's work week was reduced from four to three days. The appellant received no notice of the action taken by her employer. No other employees experienced similar restrictions on duties or hours worked.

On December 21, 1976, the appellant filed a complaint with the Commission alleging that her employer had discriminated against her on the basis of sex. She continued working for the appellee until she was discharged.[1] On February 14, 1977, Mrs. Varney filed a second complaint, charging that she was illegally terminated for having filed the initial complaint.

Following hearings and investigation, the Commission determined that the appellee had reduced Mrs. Varney's hours as a result of illegal sex discrimination and held that discrimination based upon pregnancy constitutes illegal sex discrimination under the Human Rights Act. The Commission issued its final order and ordered the appellee to cease and desist its discriminatory practices and to pay Mrs. Varney back wages.

The appellee then filed a petition for appeal in the Cabell County Circuit Court. The circuit court reversed the Commission on both its findings of fact and conclusions of law; the circuit court held that the change in the appellant's employment classification and subsequent work reduction was not sex-based, but justified by a concern for the well-being of the appellant and her unborn child.

---

1. The Commission found that the appellant's discharge was a direct result of her having filed a complaint with the Commission in December. The Circuit Court of Cabell County, in its findings of fact, determined that the appellant voluntarily left her employment. However, the Commission's findings should not have been disregarded unless found by the court to be clearly wrong. *W. Va. Code*, 29A–5–4(g) [1964]. *See also* syl. pt. 2, *Shepherdstown Volunteer Fire Department v. State ex rel. State Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983); syl. pt. 1, *West Virginia Human Rights Commission v. United Transportation Union, Local No. 655*, 167 W.Va. 282, 280 S.E.2d 653 (1981); syl. pt. 1, *City of Huntington v. State Water Commission*, 137 W.Va. 786, 73 S.E.2d 833 (1953).

Because a finding consistent with the Commission's determination is supported by the record, we will accept its findings as to the circumstances surrounding Mrs. Varney's termination of employment.

## II

The initial issue before this Court is whether the Circuit Court of Cabell County, in substituting its findings of fact for those of the agency charged with enforcement of the West Virginia Human Rights Act, erred by failing to comply with *W.Va. Code*, 29A–5–4(g) [1964].

Syllabus point 2 of *Shepherdstown Volunteer Fire Department v. State ex rel. State Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983), concisely charts the process of judicial review to which the circuit court in such cases must adhere:

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions, or order are:
>
> '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'

In the case now before us, the appellant challenges the findings of fact as made by the Circuit Court of Cabell County. The appellant contends that such court erred by substituting its own judgment regarding the facts for the findings submitted by the Commission, thereby failing to apply the appropriate standard of review set forth above.

In order to adhere to the statutory and precedential prerequisite mentioned above, a reviewing court must evaluate the record of the agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion on the same set of facts. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518, 528 (1985).

The Supreme Court of the United States has recently stressed the extremely limited scope of review when applying the "clearly wrong" standards to Title VII actions tried in federal courts. The Court emphasized the narrow nature of this review:

> This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, supra*, 470 U.S. at 573–74, 105 S.Ct. at 1511–12, 84 L.Ed.2d at 528. *See also United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150, 153 (1949).

Pursuant to *W.Va.Code*, 29A–5–4(g)(5) [1964], the rejection of administrative findings is sanctioned only when "an order of an administrative body based upon a finding of facts ... is contrary to the evidence, or is not supported by the evidence, or is based upon a mistake of law, ..." *Guine v. Civil Service Commission*, 149 W.Va. 461, 469, 141 S.E.2d 364, 369 (1965). Otherwise, if in reviewing administrative decisions or orders in contested cases, the courts routinely substitute their judgments for those of the agencies, the utility of administrative adjudication would be lost.

A. Neely, *Administrative Law In West Virginia* § 5.57 at 438 (1982).

This Court has applied the standards described above to Human Rights Commission appeals and has not hesitated to reverse orders entered by the circuit courts when their reversals of Commission rulings have been based on an inappropriate application of the "clearly wrong" principle. *See West Virginia Human Rights Commission v. United Transportation Union, Local No. 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981); *Shepherdstown Volunteer Fire Department v. State ex rel. State Human Rights Commission, supra.*

■ We must stress the doctrine established earlier by this Court in appeals of this nature: "West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties." Syl. pt. 1, *West Virginia Human Rights Commission v. United Transportation Union, Local No. 655, supra.*

In the case now before this Court, the Circuit Court of Cabell County substituted its interpretation of the facts surrounding the complaint for the Commission's previous judgment.[2] The court made no explicit determination that the Commission's findings were "clearly wrong."

The court's order reflected a similar reevaluation surrounding the appellant's allegation of discrimination based upon pregnancy. A factual determination that goes to the heart of the case is whether Mrs. Varney was capable of performing her work duties in a satisfactory manner. The Commission determined that the appellant capably fulfilled her tasks only to have the circuit court resolve this dispute to the

contrary. Had the circuit court applied the appropriate standard of review, it would have noted the Commission's finding was not clearly wrong, but was substantiated by evidence in the record.

Accordingly, we hold that the final order of the Cabell County Circuit Court conflicts with the standard of review required by the State Administrative Procedures Act. The record demonstrates that the Commission's findings were not clearly wrong, but were substantiated by evidence on the record as a whole. Thus the findings of the Commission shall be reinstated.

### III

An issue of first impression in this jurisdiction is whether discrimination based upon pregnancy constitutes illegal sex discrimination pursuant to the West Virginia Human Rights Act, *W.Va.Code,* 5–11–9 [1981].

Appellant contends that her reduction in working hours resulted solely from the fact that she was pregnant. She maintains that such treatment constituted unlawful discrimination upon the basis of sex. Appellant further asserts that she was unlawfully terminated from employment because she filed a discrimination complaint with the Commission. Appellee contends that the changes in the appellant's work duties were justified because the appellant was incapable of performing certain aspects of her job.

The West Virginia Human Rights Act, in Chapter 5, Article 11, of the *West Virginia Code* provides:

It is the public policy of the State of West Virginia to provide all of its citizens equal opportunity for employment, ... Equal opportunity in the [area of]

---

2. For example, when discussing whether the appellant voluntarily left her employment or was discharged in retaliation to the initial complaint she had filed with the Commission, the court reasoned, "It is more credible to believe that after the scene caused by her husband and the immediacy of her delivery that she voluntarily left her employment." Final order of the Circuit Court of Cabell County, p. 5 at par. 12.

The court entered this finding despite the fact that there was ample evidence in the record

supportive of the fact, consistent with the Commission's finding, that the appellant was wrongfully discharged. In fact, in this determination, the circuit court ignored testimony from the employer himself, Frank Peters, Jr., when he conceded knowledge of the appellant's engagement in protected activities, "I know Leonard and Kathy had been going to the Human Rights people. They had been talking, there's not many secrets in a small store like that." Transcript of public hearing at 175.

employment ... is hereby declared to be a human right or civil right of all persons without regard to ... sex, ...

The denial of these rights to properly qualified persons by reason of ... sex, ... is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society.

*W. Va. Code*, 5–11–2 [1981]. *See Currey v. State Human Rights Commission*, 166 W.Va. 163, 273 S.E.2d 77 (1980). *W.Va. Code*, 5–11–15 [1967] further provides that "[t]he provisions of this article shall be liberally construed to accomplish its objectives and purposes." *See also Shepherdstown Volunteer Fire Department v. State ex rel. State Human Rights Commission, supra.*

Accordingly, this Court has consistently interpreted the West Virginia Human Rights Act broadly. *W. Va. Code*, 5–11–9(a) [1981], however, does not specifically define pregnancy as being within the ambit of its provisions. The statute provides:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the State of West Virginia or its agencies or political subdivisions:

(a) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required....

Thus, we must determine whether this statute encompasses pregnancy within its protective purposes. This is a case of first impression for this Court and one of critical importance to all women of this State but particularly the working women.

In October, 1978, Congress enacted an amendment to Title VII of the Civil Rights Act known as the Pregnancy Discrimination Act. This amendment decreed that maternity must be equated with other conditions for purposes of sick leave or temporary medical benefits:

(k) The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2(h) of this title shall be interpreted to permit otherwise.

42 U.S.C. § 2000e(k) (1982).

The Supreme Court of the United States recently interpreted the Pregnancy Discrimination Act in *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983). There, the Court determined that the amendment "makes clear that it is discriminatory to treat pregnancy-related conditions less favorably than other medical conditions." 462 U.S. at 684, 103 S.Ct. at 2631, 77 L.Ed.2d at 103. Furthermore, the Court concluded that "[t]he Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." *Id.* Thus, the federal statutory scheme and the nation's highest Court now recognize pregnancy discrimination as unlawful discrimination based upon sex.

Various jurisdictions have considered this issue. When confronting the illegality of a mandatory maternity leave scheme under the Pennsylvania Human Rights Act, the Pennsylvania Supreme Court concluded that such policies were unlawful and violative of the Act. *Cerra v. East Stroudsburg Area School District*, 450 Pa. 207, 299 A.2d 277 (1973). In *Brooklyn Union Gas Co. v. New York State Human Rights Appeal Board*, 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393 (1976), the New York Court of Appeals concluded that private employers may not treat pregnancy differently from other medical conditions. Other jurisdictions have interpreted their Human Rights Laws to prohibit pregnancy-based discrimination. *See Massachusetts Elec-*

*tric Co. v. Massachusetts Commission Against Discrimination,* 375 Mass. 160, 375 N.E.2d 1192 (1978); *Goodyear Tire & Rubber Co. v. Department of Industry, Labor, & Human Relations,* 87 Wis.2d 56, 273 N.W.2d 786 (1978).

We recognize that the West Virginia Human Rights Act, *W.Va.Code,* 5–11–1, *et seq.,* as amended, does not enumerate pregnancy among the specifications subject to its protective provisions. However, *W.Va. Code,* 5–11–15 [1967] provides that "[t]he provisions of this article shall be liberally construed to accomplish its objectives and purposes." In accordance with this legislative mandate, this Court shall interpret the Human Rights Act broadly.

Recently, we have held that equal employment is a fundamental right. *Allen v. State Human Rights Commission,* 174 W.Va. 139, 324 S.E.2d 99 (1984). *See also W.Va.Code,* 5–11–2 [1981]. When our legislature enacted the Human Rights Act, it intended to eliminate all discriminatory practices including discriminatory treatment of men, as well as women. However, the purpose of that statute should not be thwarted because the discriminatory act adversely affects only a small group of a protected class, as is the case with pregnant women. Pregnant women, like all persons who capably perform the requisite duties, must be afforded an equal opportunity for employment.

Child bearing is the most fundamental condition of human existence. To deny protection to those working women who fulfill that critical role in our society and who also provide for those persons dependent upon them would be outrageously unjust. Given the realities of our society, such denial would not be acceptable by any enlightened standard.

■ Accordingly, we hold that discrimination based upon pregnancy constitutes illegal sex discrimination under the West Virginia Human Rights Act, *W.Va.Code,* 5–11–9(a) [1981].

In so holding, we are not unmindful of the earlier United States Supreme Court decision in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). In *Gilbert,* the court determined that an employer's disability plan did not violate Title VII because of its failure to cover pregnancy-related conditions. In light of the recent amendments to the federal statutory scheme governing employment discrimination and the Court's response to these enactments (discussed *supra*), we do not find the *Gilbert* case dispositive of the issue before us today.

Since we have ruled that pregnancy-based discrimination is unlawful under the West Virginia Human Rights Act, the appellant must satisfy her burden of proof in regard to the specific discriminatory allegations with which she has charged her employer.

Pursuant to *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), discrimination may be proven by direct or inferential evidence, or by a combination of the evidence. In *Green,* the United States Supreme Court determined the standards for proving a *prima facie* case of employment discrimination.

The Court held that a *prima facie* case is established by a complainant by:

showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. (footnote omitted)

411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677.

In *Shepherdstown Volunteer Fire Department v. State ex rel. State Human Rights Commission, supra,* we adopted the evidentiary standards of *Green* to the sexual discrimination context and held:

In an action to redress unlawful discriminatory practices in employment ... under the West Virginia Human Rights Act, *as amended, W.Va.Code,* 5–11–1 *et seq.,* the burden is upon the complainant to prove by a preponderance of the evi-

dence a prima facie case of discrimination, which burden may be carried by showing

(1) that the complainant belongs to a protected group under the statute;

(2) that he or she applied and was qualified for the position or opening;

(3) that he or she was rejected despite his or her qualifications; and

(4) that after the rejection the respondent continued to accept the applications of similarly qualified persons.

*Shepherdstown, supra,* syl. pt. 3.

If the complainant is successful in creating this rebuttable presumption of discrimination, the respondent may offer some legitimate, nondiscriminatory reason for the rejection. If the respondent then should succeed in rebutting the presumption of discrimination, the complainant may prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for discrimination. *See* syl. pt. 3, *Shepherdstown, supra.*

In the case now before us, the appellant has demonstrated that she is a member of a protected class; that she was capable of performing her normal duties; that her duties were reduced because of her pregnant condition; and that no males actually or potentially could be treated similarly.[3]

This Court has noted that "[c]lassifications based on factors that bear no relationship to ability to perform, such as classifications based upon gender, have the effect of relegating the entire class to inferior legal status without regard to individual capabilities." *Peters v. Narick,* 165 W.Va. 622, 632, 270 S.E.2d 760, 765 (1980).

The Court today is faced with the precise type of classification that we condemned in *Peters, supra.* The appellee's reduction of Mrs. Varney's work hours as a result of her pregnancy was unwarranted. Although the appellant was pregnant, she was capable of fulfilling her job requirements. Other women in her medical condi-

tion may not have been able to perform such tasks, but the appellee may not similarly classify Mrs. Varney without regard to her personal competence.

■ Accordingly, we hold that when a pregnant employee who capably performs her duties experiences a reduction in work hours solely because of her pregnant condition, such action by the employer constitutes illegal discrimination based upon the employee's sex and is violative of *W. Va. Code,* 5–11–9(a) [1981].

## IV

A third issue for this Court to determine is whether the appellant was discharged by her employer in retaliation for her filing a complaint with the Commission alleging discrimination based upon sex.

The Commission found that the appellant's employment was terminated by the appellee in retaliation for her engagement in protected activities. As we indicated above, such findings must not be disturbed unless they are "clearly wrong." Thus, the circuit court erred in reversing the Commission's finding of retaliatory discharge since it was not "clearly wrong," but substantiated by the evidence.

The West Virginia Human Rights Act, *W. Va. Code,* 5–11–9(i)(3) [1981] provides that it is unlawful for any person or employer to: "Engage in any form of reprisal or otherwise discriminate against any person because he has opposed any practices or acts forbidden under this article or because he has filed a complaint, testified or assisted in any proceeding under this article[.]"

The standard of proof established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green, supra,* has been adapted and applied to retaliation cases by federal courts in virtually every circuit. 3 A. Larson and L. Larson, *Employment Discrimination* § 87.30 at 17–

---

**3.** The appellee's contention that his actions were necessary for efficient operation of the business are without merit. The appellant capably performed her duties and did not impair business operations. Thus, his assertion of the "business

necessity" defense as justification for his discriminatory practice must fail. *See State ex rel. State Human Rights Commission v. Logan–Mingo Area Mental Health Agency, Inc.,* 174 W.Va. 711, 329 S.E.2d 77 (1985).

112 (1986). However, the application of the *McDonnell Douglas* pattern to retaliation has been somewhat troublesome. Retaliation is not one more way of violating the Human Rights Act; it is a separate violation, provided for in the statute. Thus, since the employer conduct alleged is of such gravity, it could be argued that the burden of proof on the plaintiff in constructing a *prima facie* case should be more exacting than under the *McDonnell Douglas* standard. Larson, *supra*, § 87.31 at 17–114.

In *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F.Supp. 318 (D.Mass.), *aff'd*, 545 F.2d 222 (1st Cir.1976), the Massachusetts district court addressed the important issue of whether there are types of objective facts from which courts would be willing to infer a retaliatory motive. The court carefully confronted the question above while giving considerable thought to the difficulties in adapting the *McDonnell Douglas* approach to retaliation:

> Following the teaching of *McDonnell Douglas* ... the court concludes that in the case of an alleged retaliatory discharge the order and allocation of proof should be as follows. The employee must make out a prima facie case by showing (1) that she engaged in protected activity, i.e., she opposed unlawful employment practices or participated in Title VII proceedings, (2) that her employer was aware of the protected activities, (3) that she was subsequently discharged, and (absent other evidence tending to establish a retaliatory motivation) (4) that her discharge followed her protected activities within such period of time that the court can infer retaliatory motivation.

425 F.Supp. at 324. *See also Gonzalez v. Bolger*, 486 F.Supp. 595 (D.D.C.1980), *aff'd without opinion*, 656 F.2d 899 (D.C.Cir. 1981); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2d Cir.1980); *Kralowec v. Prince George's County*, 503 F.Supp. 985

(D.Md.1980), *aff'd without opinion*, 679 F.2d 883 (4th Cir.1982).

■ We adopt the evidentiary standards of *Hochstadt* and hold that in an action to redress unlawful retaliatory discharge under the West Virginia Human Rights Act, *W.Va.Code*, 5–11–1, *et seq.*, as amended, the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation.

■ In this case, it is undisputed that Mrs. Varney filed a sexual discrimination complaint against her employer, the appellee, on December 21, 1976. The Commission reasonably found that the employer was aware of the protected activities in which the appellant had engaged. (see n. 2, *supra*.) She was terminated from her employment around December 29, 1976, approximately one week after the initial complaint had been filed with the Commission. Thus, all elements of proof pursuant to the preceding analysis have been met.

Accordingly, we hold that the Commission's findings of retaliatory discharge was supported by substantial evidence in the record. Its conclusion that Mrs. Varney had satisfied her burden of proof was not misplaced. Appellant's dismissal was substantially, if not wholly, motivated by the fact that she filed the December 21, 1976 complaint.

## V

We have upheld the Commission's order finding the appellant's reduction in working hours and subsequent discharge unlawful. A remaining issue is back pay.[4]

---

**4.** The Commission is authorized to issue such an order by *W.Va.Code*, 5–11–10 [1971], which provides: "If, after such hearing and consideration of all of the testimony, evidence and record in the case, the commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice ... the commission shall ... [order the employer] to take

The United States Supreme Court has confirmed that there is, in effect, a presumption favoring the award of back pay in Title VII cases where liability has been found. 2 A. Larson and L. Larson, *Employment Discrimination* § 55.33, at 11–52 (1986). The court has concluded that "[t]he power to award backpay was bestowed by Congress, as part of a complex legislative design directed at a historic evil of national proportions." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280, 296 (1975).

The threshold question is: what must an individual do in order to establish entitlement to back pay? According to federal courts which have confronted this issue the "plaintiff must first establish that she has, in fact, sustained an economic loss from defendant's discrimination." *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 787 (7th Cir.1979); *see also Marks v. Prattco, Inc.*, 633 F.2d 1122 (5th Cir.1981).

This showing contains two elements: the existence and amount of a loss, and a causal link to the defendant's discrimination. Both of these prerequisites are satisfied in the case before us. The appellant has proved that the appellee's reduction of her work hours and her subsequent discharge were discriminatory acts. In that process, the appellant has gone one step further and actually demonstrated to this Court that she was injured by such discrimination.

■ Accordingly, we hold that an award of back pay is proper in a case where an employer has violated *W.Va.Code*, 5–11–9(a) [1981] by reducing work hours for discriminatory reasons of a pregnant employee and ultimately discharging her in retaliation for her involvement in protected activities.

We have determined that an award of back pay is warranted under these circumstances. Still to be resolved is the proper amount of that award.

In *United States v. Georgia Power Co.*, 474 F.2d 906 (5th Cir.1973), the Fifth Circuit stated the rule for computation of back pay as follows:

> [I]n each case of claims for back pay ... the court must determine the most recent date on which the discriminatee's cause of action accrued.... [A] cause of action accrues whenever an individual is directly and adversely affected by the discriminatory practices of the defendant.... The date of the last act of discrimination for purposes of the statute of limitations is a question of fact.

474 F.2d at 924.

Furthermore, the Supreme Court of the United States has emphasized that the duty of courts in determining remedies once victims of unlawful employment discrimination have been identified is to recreate the conditions and relationships there would have been absent illegal discrimination. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 372, 97 S.Ct. 1843, 1873, 52 L.Ed.2d 396, 438 (1977).

In its computation of back pay, the Commission initially calculated an award representing the amount Mrs. Varney lost as a result of her reduced work hours which totalled $173.40. The Commission then computed the appellant's lost wages as a result of her retaliatory discharge by the appellee. This amount, $10,322.40, accurately reflected the fact that Mrs. Varney was unable to obtain equivalent employment for nearly two years after she was dismissed. Added to this amount [5] was the accrual of one year's pre-judgment interest at 6%, which raised the total to $11,115.14. The Commission properly offset the total award, $11,115.14, by $1,142.00 and $541.75 because those figures accurately represented the appellant's interim part-time wages and her five weeks post-partum period, respectively. Thus the Commission ordered that the amount due the appellant totalled $9,431.39.

We find that such an award was appropriate in this case. The back pay award compensates the appellant for her reduc-

---

such affirmative action, including, ... back pay...."

5. The Commission ordered that 6% interest be paid on the principal of $10,322.40, the amount awarded to compensate the appellant for her retaliatory discharge.

tion in work hours, as well as for the period of time in which she was unemployed as a result of the appellee's retaliation in discharging her. The Commission correctly determined that the back pay period ceased once the appellant had obtained comparable employment. Further, mitigating factors such as the appellant's part-time wages and her unavailability to work during her postpartum period served to reduce the award. *See generally* 2 A. Larson and L. Larson, *Employment Discrimination* § 55.37 (1986); annot., 21 A.L.R.Fed. 272 (1974); *Thomas v. Jack Marshall Foods*, 37 Fair Empl.Prac.Cas. 1607 (1983).

The circuit court has misinterpreted the evidence in its calculation of the back pay award.[6] This Court recognizes that a pregnant woman is only entitled to treatment equivalent to that accorded others who are temporarily disabled. However, it is crucial to note that the appellant was not discharged because of her condition, but because she engaged in protected activities provided for under the West Virginia Human Rights Act. Because the appellant was unlawfully dismissed, she had no job in which to return after the birth of her child. Consequently, she sustained a severe economic loss for which she should be compensated.

The record in this case shows the period of time Mrs. Varney would have been able to work during her pregnancy, as well as the date on which the baby was born. Further, the record indicates that the appellant sought and eventually obtained part-time employment, which properly reduces the award of back wages. Thus, the evidence in this case supports the Commission's award. *See Cherokee Tobacco & Candy Co. v. Civil Rights Enforcement Agency of the City of St. Louis*, 662 S.W.2d 919, 921 (Mo.Ct.App.1983).

Therefore, the appellant is entitled to an award representing the amount she lost as a result of the reduction in her work hours, as well as an additional award representing the amount she lost as a result of the appellee's retaliation in discharging her, plus pre-judgment interest thereon. The Commission's computation of back pay shall be reinstated.

For the foregoing reasons, the final order of the Circuit Court of Cabell County is hereby reversed and the final order of the West Virginia Human Rights Commission is reinstated.

Reversed.

BROTHERTON, Justice, concurring in part and dissenting in part:

I concur with the majority's holding that discrimination against a pregnant woman that is not based on her ability to work constitutes illegal sex discrimination. I am concerned, however, that the majority's conclusion in this case has put employers in a difficult spot. As I see it, the employer has two options: (1) change the pregnant employee's duties and continue to pay her for what she did prior to her pregnancy; or (2) continue to use the pregnant woman in her current position until she herself decides or it becomes objectively irrefutable that she can no longer perform her duties.

The first alternative imposes a financial hardship on an employer who may be genuinely concerned about an employee's health or safety. Also, this foreseeable cost could cause less generous employers to prefer male applicants over female applicants of child bearing age.[1]

The second alternative appears more palatable, and presumably was the avenue preferred by the petitioner in this case. It, however, lays the groundwork for a very problematic scenario: Could a pregnant employee who injured herself or her baby

---

6. The circuit court found that such an award was not justified, since there was no discrimination pursuant to *W.Va.Code*, 5–11–9 [1981]. However, the court further determined that if such award were permissible, the appellant would have only been entitled to back pay from the date of her alleged firing until she would have resigned to have her baby.

1. Eighty-five percent of working women will be pregnant at least once during their working careers. S. Kamerman, A. Kahn & P. Kingston, *Maternity Policies and Working Women* 25 (1983). Given this statistic, even the most broad-minded employer must consider the effect of employee pregnancies on the orderly operation of his or her business.

in the course of her employment successfully claim that the injury was the result of the deliberate intention of her employer? If so, she might be able to recover tort damages from her employer in addition to workers' compensation. *See* W.Va.Code § 23–4–2(b) (1985). Hopefully not. If so, then we have put the employer in a position where he cannot possibly make a correct choice.

I sympathize with employers who must discern the fine line between a woman who is pregnant but capable of performing her job and a woman who might be endangering herself or her baby by continuing to perform strenuous tasks. The decision today compels employers to allow a pregnant worker to continue her duties until she or her doctor decides otherwise. In my opinion, such a decision should also imply the assumption of some risk of injury by the pregnant employee.

Although I agree with the law regarding pregnancy discrimination as sex discrimination as found by the majority, I respectfully dissent to its holding as to back pay. The majority awarded the appellant back pay from the date of her termination until the date she got another job almost two years later. The appellant was an hourly employee, and had no written contract.

2. To date, most courts considering the issue have held that a sex-neutral leave policy that does not allow a sufficient leave for childbearing is not actionable sex discrimination. *See, generally* Note, *Employment Equality Under the*

Frank's Shoe Store had no disability leave for men or women sufficient to cover the time from the birth of her child until she was released from her doctor's care five weeks later.[2] Kathy Varney, therefore, would have had to resign no later than the date her baby was born. Frank Peters, Jr. testified that Kathy Varney indicated her desire to come back after the baby was born, and that he agreed. Kathy Varney testified that there was no agreement to rehire her. [HRC Tr. 72, 171]. The record reflects no consideration or detrimental reliance relative to this agreement, if in fact there was one. I do not believe that such evidence constitutes substantial evidence of an enforceable contract to rehire by the employer, or to return to work by the appellant. I would, therefore, have limited the award of back pay to the period prior to delivery.

I am authorized to state that Justice NEELY joins me in this dissent.

*Pregnancy Discrimination Act of 1978,* 94 Yale L.J. 929, 940–43 (1985).