458 S.E.2d 469

Abraham J. BERLOW, M.D., Petitioner
Below, Appellee,

v.

WEST VIRGINIA BOARD OF
MEDICINE, Respondent
Below, Appellant.

No. 22588.

Supreme Court of Appeals of
West Virginia.

Submitted May 3, 1995.

Decided May 19, 1995.

Deborah Lewis Rodecker, Charleston, for appellant.

Jolyon W. McCamic, Wheeling, for appellee.

## PER CURIAM:

The West Virginia Board of Medicine appeals the order of the Circuit Court of Ohio County restricting Abraham J. Berlow, M.D.'s license to practice medicine for two months. On appeal, the Board argues that its more restrictive order, permitting Dr. Berlow to perform only a limited number of tonsillectomies and then only with an assistant capable of performing the tonsillectomy and a supervising physician, is necessary to protect the public interest. Because we agree that the circuit court lacked justification to modify the Board's order, we reverse the circuit court and reinstate the Board's order.

Dr. Berlow, who is currently 86 years old, received his medical degree from the Royal Colleges of Physicians and Surgeons, Glasgow, Scotland in 1952. Dr. Berlow, an eye, ear, nose and throat surgeon who is not board certified, is licensed to practice medicine and surgery in West Virginia. Dr. Berlow has a private practice in Wheeling and since 1962, has performed over 2,000 tonsillectomies.

By letter dated January 31, 1992, R.V. Pangilianan, M.D., the Chair of the Department of Ophthalmology and Otolaryngology at Ohio Valley Medical Center, advised Dr. Berlow that based on a review of forty-two of his tonsillectomy and adenoidectomy (T & A) cases, the Department determined that his patients had excessive blood loss. The Department recommended that Dr. Berlow be trained in newer surgical techniques for T & A cases. By letter dated May 21, 1992, Ohio Valley Medical Center reappointed Dr. Berlow to its Medical/Dental Staff but withheld privileges to perform T & A surgery, pending additional training.

Dr. Berlow received additional training in the dissection hyfercation technique from Phillip Mathias, M.D. and in Cincinnati, Ohio.[1] However, Dr. Berlow was unsuccessful in his two attempts to use the new procedure. According to Dr. Mathias, both cases resulted in excessive blood loss requiring Dr. Mathias to complete the procedures. Dr. Mathias testified that during the procedures, Dr. Berlow had difficulty with his vision, did not follow any standard technique, had difficulty remembering things, had shaking and trembling hands and was unable to use his right arm effectively. Dr. Berlow testified that Dr. Mathias had required him to set up the table during these two procedures, which Dr. Mathias had not done when Dr. Berlow observed. Dr. Berlow said that Dr. Mathias' criticism had the effect of making him shaky. By letter dated July 27, 1992, Dr. Mathias said "that Dr. Berlow should not be doing T and A's without an assistant ... able to do a T and A and proceed with a T and A if he [Dr. Berlow] gets into trouble."

Harry S. Weeks, Jr., M.D., an anesthesiologist at Ohio Valley Medical Center, testified that other physicians at the facility had a

---

1. Several physicians testified that surgeons should use the technique most comfortable to them and that data suggests minimal differences in blood loss among the different T & A techniques.

higher incidence of T & A post operative bleeding than Dr. Berlow. Dr. Weeks, who over the last 10 years was the anesthesiologist in about 25% of Dr. Berlow's T & A procedures, noticed that Dr. Berlow was starting to show the aging process and was slower in the operating room than six years ago. Dr. Weeks concluded that although Dr. Berlow should not perform T & A procedures any longer, Dr. Berlow was able to maintain an office practice in his specialty.

After the Acting Chair of the Department of Ophthalmology and Otolaryngology received Dr. Mathais' letter, the Department notified the President and Chief Executive Officer of Ohio Valley Medical Center. Dr. Berlow, at the suggestion of Dr. Weeks, requested that his staff privileges be moved to emeritus status and Dr. Berlow's request was granted. Emeritus status at Ohio Valley Medical Center means a physician has no clinical privileges and may not care for patients at the Center. Dr. Berlow has staff privileges at another hospital.

Ohio Valley Medical Center notified the Board of Medicine, which contacted Dr. Berlow to see if he wanted his license to be placed on inactive status. Because Dr. Berlow refused to request inactive status, the Board required Dr. Berlow to submit to a physical and mental examination. By letter dated December 29, 1992, George R. Hanna, M.D., a Professor of Neurology at the University of Virginia, concluded that "our evaluation reveals no medical reason why Dr. Berlow should not be able to practice medicine." However, Jeffery T. Berth, Ph.D., Chief of Psychology, Director, Neuropsychology, suggested "a supervisory relationship where his [Dr. Berlow's] work quality can be monitored on a very regular basis."

Based on the evidence, the Board determined that probable cause existed to substantiate the charges of disqualification from the practice of medicine and surgery. Dr. Berlow rejected the Board's offer to delay the complaint's filing for two months in order for a physician selected by the Board to review Dr. Berlow's medical records and to observe his practice.

The matter was heard by a Hearing Examiner who questioned whether Dr. Berlow's treatment by his colleagues had been totally objective and professional. However, the Hearing Examiner found sufficient evidence for "a temporary limitation or restriction" on Dr. Berlow's performing T & A procedures to allow the Board "to conduct an objective and impartial investigation of the issues." The Hearing Examiner recommended "a temporary restriction for a period of time not to exceed two months, prohibiting him [Dr. Berlow] from performing T and A procedures without an assistant who can perform T and A procedures. During the time period, the Board may select a physician to review the respondent's files . . . and submit a report to the Board . . . [to] determine if additional action should be taken against the respondent."

By order dated September 16, 1993, the Board adopted the Hearing Examiner's Findings of Fact and Conclusions of Law except for the two-month restriction. Citing public safety, the Board determined that, rather than a time based restriction during which no procedures might be performed, the temporary restriction should be imposed "until such time as Dr. Berlow performs a number of T & A procedures under certain restrictions." The Board also ordered that an assistant capable of performing a tonsillectomy be present during Dr. Berlow's up to fifteen T & A procedures along with a supervising physician approved by the Board. The supervising physician, who was not to be affiliated with Ohio Valley Medical Center, was to report to the Board at the completion of the fifteen T & A procedures or sooner, if necessary.

Dr. Berlow appealed the Board's order to the circuit court. The circuit court found the Board's order "arbitrary" and reinstated the Hearing Examiner's recommended order imposing a two-month restriction on Dr. Berlow's license to perform T & A procedures. The Board, alleging that the circuit court's order fails to protect adequately the public interest and was without justification, appealed to this Court. On appeal the Board argues that it is not required to adopt automatically the Hearing Examiner's recommended sanction and that its decision to impose supervision during a limited number of proce-

dures was not arbitrary and did not violate the requirement that the agency decision be "reasoned" and "articulate." *See Citizens Bank of Weirton v. W.V. Bd. of Banking and Financial Insts.*, 160 W.Va. 220, 230, 233 S.E.2d 719, 726 (1977).

## I

*W.Va.Code* 30–3–14(i) [1989] gives the Board of Medicine authority to impose sanctions when a person is found "unqualified because of any of the grounds set forth in subsection (c) of this section...."[2] *See* 11 CRS 1A 12.3 [1994] for the sanctions the Board can impose under its legislative rules. *W.Va.Code* 30–3–14(c) [1989], allows the Board to determine a person to be unqualified for numerous reasons including "[p]rofessional incompetence ... [; or,] [t]he inability to practice medicine or surgery or podiatry with reasonable skill and safety due to physical or mental disability, including deterioration through the aging process...." *See* 11 CRS 1A 12.1 [1994].

In order to carry out its functions, *W.Va. Code* 30–3–7(a)(4) [1980] authorizes the Board to "[e]mploy investigators, attorneys, *hearing examiners*, consultants and such other employees as may be necessary. [Emphasis added.]" Although hearing examiners may be appointed to conduct hearings (11 CRS 3 10.5(h) [1989]), they "are not authorized or empowered to suspend or revoke any license or to place any licensee on probation." 11 CRS 3 10.5(p) [1989]. The Board's procedural rule, 11 CRS 3 10.5(p) [1989] states, in pertinent part:

The function of a hearing examiner is to preside at the hearing and to cause to be prepared a record of the hearing, as described above, so that the Board is able to discharge its functions. The hearing examiner shall prepare recommended findings of fact and conclusion [sic] of law for submission to the Board.

Procedural rule, 11 CRS 3 13.2 [1989], states, in pertinent part:

The hearing examiner shall submit written findings of fact and conclusions of law to the Board pursuant to West Virginia Code section three, article five, chapter twenty-nine-a, and the Board may adopt, modify or reject such findings of fact and conclusions of law.

Neither the West Virginia Medical Practice Act, *W.Va.Code* 30–3–1 [1980] *et seq.*, nor the Board's rules contains any reference to a hearing examiner making recommendations for sanctions. The Board's authority to impose sanctions under *W.Va.Code* 30–3–14 [1989] is not delegated to a hearing examiner and the Board is not required to follow the "recommendations" of a hearing examiner. We note that the Board consists of fifteen members, eight of whom are medical doctors and in this case the Hearing Examiner was a lawyer. The Board, not the hearing examiner, "shall be a regulatory and disciplinary body for the practice of medicine and surgery...." *W.Va.Code* 30–3–5 [1982].

Other jurisdictions have also refused to require a board appointed because of expertise to follow blindly the recommendations of a hearing examiner regarding sanctions. In

2. *W.Va. Code* 30–3–14(i) [1989] provides:

Whenever it finds any person unqualified because of any of the grounds set forth in subsection (c) of this section, the board may enter an order imposing one or more of the following:

(1) Deny his application for a license or other authorization to practice medicine and surgery or podiatry;

(2) Administer a public reprimand;

(3) Suspend, limit or restrict his license or other authorization to practice medicine and surgery or podiatry for not more than five years, including limiting the practice of such person to, or by the exclusion of, one or more areas of practice, including limitations on practice privileges;

(4) Revoke his license or other authorization to practice medicine and surgery or podiatry or to prescribe or dispense controlled substances;

(5) Require him to submit to care, counseling or treatment designated by the board as a condition for initial or continued licensure or other authorization to practice medicine and surgery or podiatry;

(6) Require him to participate in a program of education prescribed by the board;

(7) Require him to practice under the direction of a physician or podiatrist designated by the board for a specified period of time; and

(8) Assess a civil fine of not less than one thousand dollars nor more than ten thousand dollars.

*Matter of Haugen,* 278 N.W.2d 75, 80 n. 10 (Minn.1979) (concerning corporate and individual real estate brokers' licenses), the Minnesota Supreme Court said that "the assessment of penalties and sanctions by an administrative agency is not a factual finding but the exercise of a discretionary grant of power."

Boards and commissions like the Board of Medical Examiners are appointed because of their special expertise regarding the standards of their own professions. When a professional person must be disciplined for breaching these standards, the nature and duration of the discipline is best determined by his or her fellow professionals, who are in a superior position to evaluate the breaches of trust and unprofessional conduct.

*Padilla v. Minnesota State Bd. of Medical Examiners,* 382 N.W.2d 876, 886–87 (Minn. App.1986). In *Criminal Justice Standards and Training Commission v. Bradley,* 596 So.2d 661, 663 (Fla.1992), the Florida Supreme Court said that a "primary function of professional disciplinary boards [is] to determine the appropriate punishment for the misconduct of the professionals it regulates." The Florida Supreme Court also noted that "hearing officers . . . are judicial generalists . . . [and t]he various administrative boards have far greater expertise in their designated specialties and should be permitted to develop policy concerning penalties within their professions." *Criminal Justice Standards,* 596 S.2d at 664. *See also Pence v. Idaho State Horse Racing Commission,* 109 Idaho 112, 705 P.2d 1067 (App.1985); *Cherry v. Board of Regents of University of State of New York,* 289 N.Y. 148, 158, 44 N.E.2d 405, 412 (1942); *Beall Construction Co. v. Occupational Safety and Health Review Commission,* 507 F.2d, 1041 (8 Cir.1974); *Tempo Trucking and Transfer Corp. v. Dickson,* 405 F.Supp. 506, 514 (E.D.N.Y.1975).

## II

Although the Board is not required to accept automatically the recommendations of a hearing examiner, the Board must present "a reasoned, articulate decision." *Citizens Bank of Weirton, supra,* 160 W.Va. at 230, 233 S.E.2d at 726. *Citizens Bank of Weirton* noted that in order for judicial review of an administrative decision to be meaningful, an agency must provide more than "a mere statement of a general conclusion in the statutory language." 160 W.Va. at 231–32 n. 7, 233 S.E.2d at 727–28 n. 7. *See Consumer Advocate Division of Public Service Commission v. Public Service Commission,* 182 W.Va. 152, 386 S.E.2d 650 (1989).

In this case, the circuit court found the Board's decision to be arbitrary because it failed to adopt the sanction recommended by the Hearing Examiner. However, the Board explained that the restriction recommended by the Hearing Examiner might not provide the Board with information because during the two-month restriction Dr. Berlow might not perform any procedures. The Board's order explained:

Rather than impose a temporary restriction for a period of time, during which time Dr. Berlow may or may not perform any T & A procedures, the Board concludes that the imposition of the temporary restriction until such time as Dr. Berlow performs a number of T & A procedures under certain restrictions is safer for the public and more appropriate.

In this case, we find that the Board provided an understandable justification for modifying the Hearing Examiner's recommended sanction. The Board's sanction, crafted for circumstances of this case, allows Dr. Berlow to practice and protects the public interest. Dr. Berlow's characterization of the Board's sanction, which was adopted by the circuit court, as "so onerous and demanding that it amounts to removing . . . [Dr. Berlow] from the practice of medicine," is without merit.[3]

---

**3.** In his brief, Dr. Berlow objects to the Board's order because it allows him to select the supervising physician rather than having the Board select. The Board maintains that Dr. Berlow was given the selection to avoid perceptions of conflict. The Board alleges that, if requested, it would assist Dr. Berlow in the selection.

Dr. Berlow also questions the payment of the supervising physician. The Board submitted an affidavit from Ronald D. Walton, the Board's Executive Director, noting that payment by the supervised physician would not be appropriate

Dr. Berlow also argues that the Board's order fails to provide a process for him to appeal if the supervising physician recommends terminating his license to perform T & A procedures. During oral arguments, the Board acknowledged that its order did not specify any appeal process. However, the Board did note that under *W.Va. Code* 30–3–14(j) [1989], it could take action against a physician when it finds "an immediate danger to the public." When the Board undertakes such action, *W.Va. Code* 30–3–14(j) [1989] requires the Board to institute proceedings for a hearing to begin within fifteen days of such action and to render a decision within five days of the hearing's conclusion.[4] *See* 11 CSR 1A 14.16 [1994]. According to the Board, an adverse action by Dr. Berlow's supervising doctor would be under this *Code* subsection and the Board would follow the subsection's hearing procedures. If the hearing resulted in a disciplinary action against Dr. Berlow, under *W.Va. Code* 30–3–14(k) [1989], he would have the right to appeal to the circuit court. Although the Board's order does not outline the process to appeal if the supervising physician finds that Dr. Berlow's performance falls below a reasonable standard of care, the appeal process specified in *W.Va. Code* 30–3–14 [1989] is applicable and, therefore, we find that the Board's order does not deprive Dr. Berlow of due process.

## III

The Medical Practice Act states that persons affected by a disciplinary action by the Board can seek review in the circuit court in accordance the Administrative Procedures Act, *W.Va. Code* 29A–5–1 [1964] *et seq.*[5] *W.Va. Code* 29A–5–4(g) [1964], allows a circuit court to reverse a decision of the Board if a party's substantial rights:

[H]ave been prejudiced because the administrative findings, inferences, conclusions, decision or order are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

■ The standard of judicial review that must be followed by a circuit court in contested cases was stated by this Court in Syl. pt. 2, *Shepherdstown Volunteer Fire Department v. West Virginia Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983):

Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or

---

and that supervising physicians donate their time to the program.

**4.** *W.Va. Code* 30–3–14(j) [1989] states:

Notwithstanding the provisions of section eight [§ 30–1–8], article one, chapter thirty of this code, if the board determines the evidence in its possession indicates that a physician's or podiatrist's continuation in practice or unrestricted practice constitutes an immediate danger to the public, the board may take any of the actions provided for in subsection (i) of this section on a temporary basis and without a hearing, if institution of proceedings for a

hearing before the board are initiated simultaneously with the temporary action and begin within fifteen days of such action. The board shall render its decision within five days of the conclusion of a hearing under this subsection.

**5.** *W.Va. Code* 30–3–14(k) [1989] states, in pertinent part:

Any person against whom disciplinary action is taken pursuant to the provisions of this article has the right to judicial review as provided in articles five and six [§§ 29A–5–1 et seq. and 29A–6–1 et seq.], chapter twenty-nine-a of this code.

(3) Made upon unlawful procedures; or (4) Affected by other error of law, or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

*In accord* Syl. pt. 1, *Smith v. Bechtold,* 190 W.Va. 315, 438 S.E.2d 347 (1993); Syl. pt. 1, *FMC Corp. v. W.Va. Human Rights Commission,* 184 W.Va. 712, 403 S.E.2d 729 (1991); *Frank's Shoe Store v. W.Va. Human Rights Commission,* 179 W.Va. 53, 56, 365 S.E.2d 251, 254 (1986).

*Frank's Shoe Store, supra,* 179 W.Va. at 56, 365 S.E.2d at 254, explained that "a reviewing court must evaluate the record of the agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision."

■ In this case, the Board's decision to apply a procedure based limitation rather than a time based restriction and to require the presence of a supervising physician are supported by the record.[6] The Board's determination of the sanction is not arbitrary and the Board's order explained why a proce-

dure based restriction was preferred to a time based restriction. The circuit court should not have reversed the Board "simply because it is convinced that it would have decided the case differently...." *Frank's Shoe Store, supra,* 179 W.Va. at 56, 365 S.E.2d at 254, *quoting Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985).

For the above stated reasons, the order of the Circuit Court of Ohio County is reversed and the September 16, 1993 order of the West Virginia Board of Medicine is reinstated.

Reversed.

BROTHERTON, J., did not participate.

MILLER, Retired J., and FOX, J., sitting by temporary assignment.

---

6. The presence during Dr. Berlow's T & A procedures of a fully trained assistant was required by both the Board and the circuit court.