465 S.E.2d 230

**Shakuntala MODI, M.D., Petitioner Below, Appellee,**

v.

**WEST VIRGINIA BOARD OF MEDICINE, Respondent Below, Appellant.**

No. 22792.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 1995.

Decided Nov. 17, 1995.

Jolyon W. McCamic, McCamic & McCamic, Wheeling, for Appellee.

Deborah Lewis Rodecker, Charleston, for Appellant.

ALBRIGHT, Justice:

This case is a contested administrative proceeding under W.Va.Code § 29A–5–1, *et seq.,* initiated by the West Virginia Board of Medicine (the Board) pursuant to the disciplinary authority of W.Va.Code § 30–3–14,[1] against Shakuntala Modi, M.D., a psychiatrist. Dr. Modi is a physician licensed in West Virginia and is engaged in a solo practice in Wheeling.

---

1. The relevant portions of the statute under which violations by Dr. Modi was charged are set forth below; the Board regulations cited in the Notice of Hearing are direct quotations of the statutory provisions recited here.

(c) The board may deny an application for license or other authorization to practice medicine and surgery or podiatry in this state and may discipline a physician or podiatrist licensed or otherwise lawfully practicing in this state who, after a hearing, has been adjudged by the board as unqualified due to any of the following reasons:

\* \* \* \* \* \*

(5) Making or filing a report that the person knows to be false; intentionally or negligently failing to file a report or record required by state or federal law; willfully impeding or ob-

structing the filing of a report or record required by state or federal law; or inducing another person to do any of the foregoing. Such reports and records as are herein covered mean only those that are signed in the capacity as a licensed physician or podiatrist.

\* \* \* \* \* \*

(14) Performing any procedure or prescribing any therapy that, by the accepted standards of medical practice in the community, would constitute experimentation on human subjects without first obtaining full, informed and written consent.

\* \* \* \* \* \*

(17) Violating any provision of this article or a rule or order of the board, or failing to comply with a subpoena or subpoena duces tecum issued by the board.

The disciplinary proceeding grows out of Dr. Modi's care and treatment of William Abbott by use of a technique known as depossession therapy. The Notice of Hearing prepared by the Board and served on Dr. Modi charged:

6. Depossession therapy is not care and treatment recognized by a reasonable, prudent physician engaged in the same specialty as being acceptable under similar conditions and circumstances, and accordingly, Dr. Modi has violated *West Virginia Code* § 30–3–14(c)(17), and Board regulation 11 CSR 1A 12.1(x), in her care and treatment of the complainant [Mr. Abbott] on June 1, 1990.

7. Dr. Modi's use of depossession therapy in her care and treatment of the complainant on June 1, 1990, and in her medical practice generally, constitutes performing procedures or prescribing a therapy that by the accepted standards of medical practice in the community constitutes experimentation on human subjects without first obtaining full, informed and written consent, and accordingly, Dr. Modi has violated *West Virginia Code* § 30–3–14(c)(14), (17), and Board regulations 11 CSR 1A 12.1(y).

8. Dr. Modi's billing to the complainant's insurer, Blue Cross Blue Shield of West Central West Virginia in Parkersburg, for the care and treatment rendered to the complainant on June 1, 1990, by her, was a falsely filed report which Dr. Modi knew was false, because depossession therapy is not a form of psychotherapy recognized as acceptable under similar conditions and circumstances by a reasonable, prudent physician, engaged in the same specialty, and accordingly, Dr. Modi has violated *West Virginia Code* § 30–3–14(c)(5), (17), and Board regulations 11 CSR 1A 12.1(p).

9. Dr. Modi's use of depossession therapy, as set forth in paragraph 4, and her billing to the insurer, as set forth in paragraph 5, constitutes unprofessional conduct, and accordingly, Dr. Modi has violated *West Virginia Code* § 30–3–14(c)(17) and Board regulation 11 CSR 1A 12.1(j).

Dr. Modi filed an answer admitting the use of depossession therapy and denying any conduct justifying disciplinary action. After lengthy procedural manuevers and extensive hearings, the hearing examiner, Edward C. Goldberg, prepared a thirty-six page report of "Recommended Findings of Fact and Conclusions of Law" which rather fully discussed the issues of procedure, law and facts in the case.

## UNDERLYING FACTS

From the hearing examiner's report it may be ascertained that on June 1, 1990, the appellee here, Dr. Shakuntala Modi, undertook to treat Mr. William Abbott in her office by use of depossession therapy. According to Dr. Modi, depossession therapy involves the use of hypnosis or hypnotherapy to relieve individuals of fears arising from such individuals' beliefs or feelings that they are or may be possessed by spirits. Dr. Modi also testified that the use of depossession therapy does not imply that the practitioner believes his or her patient is possessed by such spirits, but requires only that the practitioner conclude that the patient being treated believes himself or herself to be so possessed.

It appears that preparatory to this session, Dr. Modi discussed the proposed use of the therapy with a hypnotist who had previously treated Mr. Abbott and who had accompanied Mr. Abbott to Dr. Modi's office and took a rather complete history from Mr. Abbott. It further appears that Dr. Modi did not thoroughly discuss the intended therapy with Mr. Abbott or obtain a written consent for the therapy from him. After commencing the depossession therapy session with Mr. Abbott, it appears that Dr. Modi worked with the patient for about four hours, utilizing what Dr. Modi described as hypnotherapy. According to Mr. Abbott, Dr. Modi engaged in various incantations and called upon angels to lift dead souls out of his body in the course of the extended therapy session.

Mr. Abbott filed a complaint against Dr. Modi with the West Virginia Board of Medicine regarding his depossession treatment. Based on the complaint the Board then instituted the present proceeding, setting forth the charges quoted above, including the charge that Dr. Modi had improperly billed

an insurance company $480.00 for psychotherapy when, in fact, she had engaged in depossession therapy.

During the proceedings before the hearing examiner extensive evidence was developed regarding the circumstances surrounding Dr. Modi's treatment of Mr. Abbott and, of particular importance here, on the question of whether depossession therapy was an accepted form of medical treatment which would not require a written informed consent or whether it was an experimental treatment which would require such a consent.

## THE DECISIONS BELOW

The hearing examiner's report described five ultimate issues, which may be summarized as follows:

1. Did the Board establish that by using depossession therapy on Mr. Abbott, Dr. Modi violated Code § 30–3–14(c)(17) and Board Reg. 12.1(x) [2] because a reasonable, prudent physician in the same specialty would not recognize depossession therapy as being acceptable under similar conditions and circumstances?

2. Did Dr. Modi violate Code § 30–3–14(c)(14) and (17) and Board Reg. 12.1(y) by using an experimental therapy without first obtaining a full, informed and written consent from Mr. Abbott?

3. Did Dr. Modi violate Code § 30–3–14(c)(5), (17) and Board Reg. 12.1(p) by filing a false report with the patient's insurance carrier when she described her use of depossession therapy as psychotherapy when depossession therapy is not recognized by reasonable, prudent physicians in the same specialty as being acceptable under similar conditions and circumstances?

4. Did Dr. Modi engage in unprofessional conduct in violation of Code § 30–3–14(c)(17) and Board Reg. 12.1(j) by using

depossession therapy and billing the patient's insurer for the service?

5. If it is found that Dr. Modi violated the cited sections in one or more particulars, what is the appropriate sanction to be imposed?

In his report, the hearing examiner concluded that the Board of Medicine had the burden of proof to establish its charges by "full, preponderating and clear evidence". He further concluded that Dr. Modi was entitled to adduce evidence from experts who were not licensed to practice medicine in any of the United States on the issues of whether depossession therapy is a legitimate form of care and treatment and whether such therapy is experimental.

Based on the evidence before him, the hearing examiner stated that the Board had proved that depossession therapy is indeed experimental and that Dr. Modi had obtained neither written nor informed consent from the patient. He further concluded that Dr. Modi's use of depossession therapy was legitimate care and treatment for which Dr. Modi is entitled to bill patients and their insurers and that, consequently, the billing to the insurance carrier was not false billing and was not unprofessional conduct. Lastly, the hearing examiner rejected the parties' proposed findings of fact that were inconsistent with these conclusions after a lengthy discussion of the evidentiary bases for his various conclusions.

Having found that Dr. Modi violated W.Va. Code § 30–3–14(c)(14) and (17) by the use of an experimental therapy without first obtaining a full, informed and written consent, the hearing examiner recommended to the Board that Dr. Modi be sanctioned by: (1) a public reprimand (2) being required to undergo additional education on the subject of informed consent and (3) a civil fine of $1,000.[3]

Upon submission of the hearing examiner's report to the Board, a twelve page order was

---

2. See note 1 for the relevant statutory provisions referred to by the hearing examiner; the board regulations cited are direct quotes of the statutory provisions.

3. Specifically, the hearing examiner recommended:

Dr. Modi's license should not be revoked, nor suspended. Her therapy with Mr. Abbott

did not effectively preclude him from obtaining alternative assistance from other health providers, including psychiatrists and/or hypnotherapists, after they terminated their professional relationship, which began and ended on June 1, 1990. The record clearly indicates that she is effective with many of her patients....

A public reprimand is, however, warranted for her failure to secure the informed consent

issued by the Board which incorporated the hearing examiner's report with extensive changes. The Board order offers no explanation for those changes. The changes were accomplished by references in the Board order to pages in the examiner's report, excising certain material by such references and adding other material. The Board excised over twenty-one pages of the hearing examiner's report and added perhaps a page or two of material.[4]

In the conclusionary portion of the order, the Board found that Dr. Modi is unqualified

of Mr. Abbott prior to the commencement of therapy. There is little question that she should have directly explained to Mr. Abbott the benefits, as well as the risks, incident to her therapy. She should also have clearly indicated to him that her form of psychotherapy is considered controversial, by many. Even though this failure to obtain the informed consent of Mr. Abbott on June 1, 1990, occurred in the course of a practitioner's unblemished practice, it should not be overlooked and condoned.

I would further recommend that Dr. Modi be required to participate in some form of education prescribed by the Board which emphasizes the need for informed consent, especially when one is practicing as a pioneer in a controversial area. It is my opinion that Dr. Modi did not understand, and may still not fully understand, the need to inform her patients of the risks incident to psychotherapy, hypnotherapy and especially that which is termed "depossession therapy". It is not enough to inform patients of the anticipated benefits of treatment. It is also important to explain the risks incident thereto. Even though Dr. Modi appears to sincerely believe in the benefits of depossession therapy, she must provide her patients with an opportunity to make a meaningful decision whether or not to undergo such therapy.

Further, it is the recommendation of the undersigned that a civil fine of $1,000.00 be assessed....

4. As examples of the structure of the Board's order we quote the following excerpts:

[T]he Board adopts the Findings of Fact and Conclusions of Law recommended by the Hearing Examiner beginning at page 9 at section V. and continuing through page 33 at the end of D. *Informed Consent*, with the following modifications:

The Board strikes and does not adopt the language beginning at B. *Standard of Care and Treatment* on page 13 through the paragraph ending ... "time was a factor.", on page 25.

The Board strikes and does not adopt at D. *Informed Consent*, on page 30, the following sentences, "On the other hand, Dr. Tinnin is incorrect in his insistence upon written documented informed consent, under the West Virginia law. There is simply no such legal requirement for written informed consent in West Virginia which this Hearing Examiner is aware of at this time". Further, the Board strikes and does not adopt the language on page 30, "except the testimony regarding the written documentation portion of informed consent". In the first full paragraph on page 32, the Board strikes and does not adopt the words "form consent", and inserts in lieu thereof the words "informed consent".

The Board adds at D. *Informed Consent*, on page 32, after the paragraph ending "the thrust of informed consent.", the following:

"Further, the Code of Medical Ethics, Current Opinions of the Council on Ethical and Judicial Affairs of the American Medical Association specifically states:

8.08 INFORMED CONSENT. The patient's right of self-decision can be effectively exercised only if the patient possesses enough information to enable an intelligent choice. The patient should make his or her own determination on treatment. The physician's obligation is to present the medical facts accurately to the patient or to the individual responsible for the patient's care and to make recommendations for management in accordance with good medical practice. The physician has an ethical obligation to help the patient make choices from among the therapeutic alternatives consistent with good medical practice. Informed consent is a basic social policy for which exceptions are permitted (1) where the patient is unconscious or otherwise incapable of consenting and harm from failure to treat is imminent; or (2) when risk-disclosure poses such a serious psychological threat of detriment to the patient as to be medically contraindicated. Social policy does not accept the paternalistic view that the physician may remain silent because divulgence might prompt the patient to forego needed therapy. Rational, informed patients should not be expected to act uniformly, even under similar circumstances in agreeing to or refusing treatment. (I, II, III, IV, V)

\* \* \* \* , \* \*

The Hearing Examiner's Recommendation is attached hereto and only to the extent specified, and consistent with the findings and conclusions set forth in this Order, is incorporated by reference herein ...

Further, to the extent that the Findings and Conclusions found in this Order are generally consistent with any proposed Findings of Fact and Conclusions of Law submitted by the parties, the same are adopted by the West Virginia Board of Medicine, and conversely, to the extent that the same are inconsistent with these findings and conclusions, the same are rejected.

to practice medicine without certain limitations. With respect to sanctions, the Board order adopted the hearing examiner's recommendation for a public reprimand and a fine of $1,000. It also adopted and expanded upon the education recommendation.[5] Finally, the Board order required that Dr. Modi develop and obtain Board approval of a particular form of "informed" written consent for the use of depossession therapy and that a copy of the approved form, signed by any patient undergoing depossession therapy, be submitted by Dr. Modi with any bill sent an insurance company for such therapy.

Dr. Modi appealed the Board order to the Circuit Court of Ohio County. The circuit court reversed and vacated the Board order upon a finding that it was arbitrary and an abuse of discretion. The court found that the Board had failed to give a concise and explicit statement of the facts upon which the Board based its decision. The court also found that the Board failed to supply reasons for rejecting Dr. Modi's proposed findings of fact and for rejecting the hearing examiner's determination that expert testimony offered on behalf of Dr. Modi from persons other than physicians licensed to practice in the United States should be considered by the Board. Further, the court concluded that the Board acted arbitrarily in imposing on Dr. Modi the requirements regarding consent forms and billing practices with respect to depossession therapy.[6]

The Board of Medicine appealed the circuit court's order to this Court. Five errors are assigned, as follows:

5. The Board's order regarding education reads as follows:

As a program of education, the Respondent shall review and study The Belmont Report, Ethical Principles and Guidelines for the Protection of Human Subjects of Research of the National Commission for the Protection of Human Subjects of Biomedical and Behavioral Research, and then the Respondent shall develop and utilize an informed consent form in her practice of depossession or spirit releasement therapy, which all patients undergoing hypnotherapy will review and sign prior to undergoing hypnotherapy. Such consent form shall include provisions clearly enunciating the fact that the hypnotherapy may include depossession or spirit releasement therapy, which is experimental, and that all the risks associated with it are not known because of the lack of scientific basis for such therapy. Such consent form shall clearly enunciate that any patient undergoing such therapy will be responsible for the payment of any bill from the Respondent for the Respondent's care and treatment in this regard, that if an insurer is billed, a copy of the signed consent form shall be submitted to the insurer with any request for payment by the physician, and that any hypnotherapy which includes the use of depossession or spirit releasement therapy, if billed to an insurer, will be billed accurately to the insurer as depossession therapy or spirit releasement therapy, not as psychotherapy. Within thirty (30) days of the date of this Order, such consent form shall be submitted to the Board for its review and approval.

6. The court said:

The Board may adopt, modify or reject the findings and conclusions of the Hearing Examiner, 11 CSR 3 13.2. Limitations on those actions are made in an important West Virginia case, *St. Mary's Hospital v. State Health Planning and Development Agency*, 178 W.Va. 792, 364 SE2nd [sic] 805 (1987). This case states that a concise and explicit statement of the facts upon which the Board reached its decision should be given. Also any proposed findings of the Petitioner should be ruled upon and a reason for their rejection should be given. The Code requires a reasoned, articulate decision that contains the evidentiary facts that allowed the Board to reach its decision, W.Va.Code 29A–5–3.

In this case the Board failed to enumerate its reasons for rejecting the Petitioner's findings and the Board does not supply reasoning for rejecting the Hearing Examiner's acceptance of the testimony of Dr. Modi's expert witnesses. Nor is reasoning supplied by the Board for rejecting the Hearing Examiners finding that Dr. Modi did not file a false report.

In holding that depossession therapy was not experimental, the circuit court stated:

The Petitioner [Dr. Modi] furnished expert testimony from practitioners who stated that depossession therapy is a recognized form of treatment and that it is a method of hypnotherapy ... Nevertheless, the Board accepted the Hearing Examiner's finding that Petitioner's therapy was experimental and therefore it required the patient's informed consent.

On the arbitrariness of requiring Dr. Modi to submit a written form to insurers, the court stated:

It is arbitrary for the Board to dictate that the Petitioner [Dr. Modi] develop and use a written consent form to be supplied to insurers for payment which sets forth the use of depossession therapy, not as psychotherapy. First, no written consent form is necessary and second the Board is attempting to define how claims should be filed. This is matter between the Board and the insurance provider.

1. The Circuit Court erred, was clearly wrong, and violated applicable law, in deciding that the Board's requirement was in error that Dr. Modi utilize a written consent form when engaging in depossession or spirit releasement therapy with patients.

2. The Circuit Court erred, was clearly wrong, and violated applicable law, in directing that the Board's January 14, 1993, Order be reversed and vacated, in the absence of any evidence and determination by the Circuit Court that the evidentiary findings made by the Board were wrong.

3. The Circuit Court made no determination that the substantial rights of Dr. Modi had been prejudiced by the Board's findings, inferences, conclusions decision or order, and in the absence of such a determination, erred, was clearly wrong, and in violation of applicable law, in directing that the Board's January 14, 1993, Order be reversed and vacated.

4. The Circuit Court erred, was clearly wrong, and violated applicable law, in directing that the Board's January 14, 1993, Order be reversed and vacated, as such a direction is not in the public interest which the Board by law is required to protect.

5. The Circuit Court erred, was clearly wrong, and violated applicable law, by issuing an ex parte stay without an opportunity for the Board to be heard before granting the stay.

■ In support of those assignments of errors, the Board of Medicine essentially claims that the basis of its finding was adequately articulated, that there was adequate evidence to support its findings, and that the sanctions which it imposed were appropriate.

After reviewing the record, this Court concludes that the circuit court was correct in finding that the Board made inadequate findings of fact and incorrect conclusions of law. The court below properly concluded that the billing requirement imposed upon Dr. Modi was arbitrary and capricious and was done without legal authority. We note here that a "cut and paste" version of the hearing examiner's report, as amended by the Board order, has been carefully and repeatedly studied in an effort to discern "a reasoned, articu-late decision which sets forth the underlying evidentiary facts which" led the Board to its conclusions. The exercise has not been successful. We agree with the court below "that, based on the complete record of these proceedings, the order of the Board ... is arbitrary and an abuse of discretion." However, given the finding by the hearing examiner and the Board that Dr. Modi used an experimental therapy without obtaining a signed, written and informed consent, we conclude that the court below, in addition to reversing the Board order should have also remanded the cause to the Board for reconsideration of the issues and an appropriate, reviewable order. Therefore, the judgment of the circuit court must be reversed and this cause remanded for further proceedings consistent with this opinion.

THE STANDARDS FOR REVIEW

■ In approaching the issues raised in the present appeal, the Court notes that in *Berlow v. West Virginia Board of Medicine*, 193 W.Va. 666, 458 S.E.2d 469 (1995), we recently held that the West Virginia Administrative Procedure Act, W.Va.Code § 29A–5–1, *et seq.*, establishes the guidelines to be followed by circuit courts in reviewing decisions of the West Virginia Board of Medicine. We said:

"Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law, or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discre-

tion or clearly unwarranted exercise of discretion.'" Syllabus point 2, *Shepherdstown Volunteer Fire Department v. West Virginia Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

We have previously concluded that findings of fact made by an administrative agency will not be disturbed on appeal unless such findings are contrary to the evidence or based on a mistake of law. In other words, the findings must be clearly wrong to warrant judicial interference. *Billings v. Civil Service Commission*, 154 W.Va. 688, 178 S.E.2d 801 (1971). Accordingly, absent a mistake of law, findings of fact by an administrative agency supported by substantial evidence should not be disturbed on appeal. *West Virginia Human Rights Commission v. United Transportation Union*, 167 W.Va. 282, 280 S.E.2d 653 (1981); *Bloss & Dillard, Inc. v. West Virginia Human Rights Commission*, 183 W.Va. 702, 398 S.E.2d 528 (1990).

We have also given consideration to W.Va. Code § 29A-5-3 and prior interpretations of that section by this Court. West Virginia Code § 29A-5-3 requires that:

Every final order or decision rendered by any agency in a contested case shall be in writing or stated in the record and shall be accompanied by findings of fact and conclusions of law. Prior to the rendering of any final order or decision, any party may propose findings of fact and conclusions of law. If proposed, all other parties shall be given an opportunity to except to such proposed findings and conclusions, and the final order or decision shall include a ruling on each proposed finding. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings....

After examining this statutory enactment, this Court concluded, in syllabus point 4 of *St. Mary's Hospital v. State Health Planning and Development Agency*, 178 W.Va. 792, 364 S.E.2d 805 (1987):

The requirement of West Virginia Code § 29A-5-3 that an administrative agency rule on the parties' proposed findings is mandatory and will be enforced by the courts. Although the agency does not need to extensively discuss each proposed finding, such rulings must be sufficiently clear to assure a reviewing court that all those findings have been considered and dealt with, not overlooked or concealed.

Finally, we note that this Court has construed W.Va.Code § 29A-5-3 to require fully articulated bases for agency determinations, particularly where economic or scientific matters are at issue:

2. When *W.Va.Code*, 29A-5-3 [1964] says: "Every final order or decision rendered by any agency in a contested case shall be in writing or stated in the record and shall be accompanied by findings of fact and conclusions of law...." the law contemplates a reasoned, articulate decision which sets forth the underlying evidentiary facts which lead the agency to its conclusion, along with an explanation of the methodology by which any complex, scientific, statistical, or economic evidence was evaluated. In this regard if the conclusion is predicated upon a change of agency policy from former practice, there should be an explanation of the reasons for such change.

3. In administrative appeals where there is a record involving complex economic or scientific data which a court cannot evaluate properly without expert knowledge in areas beyond the peculiar competence of courts, neither this Court nor the trial courts will attempt to determine whether the agency decision was contrary to the law and the evidence until such time as the agency presents a proper order making appropriate findings of fact and conclusions of law.

Syllabus points 2 and 3, *Citizens Bank of Weirton v. West Virginia Board of Banking and Financial Institutions*, 160 W.Va. 220, 233 S.E.2d 719 (1977).

## ERRORS OF LAW BELOW

The Board complains that the circuit court was clearly wrong in reversing the Board of Medicine in the absence of any evidence and determination that the evidentiary findings made by the Board were wrong. We dis-

agree. As previously indicated, the Board order, cobbled together by the expedient of additions to and excisions from the hearing examiners report, is barely intelligible, if at all. The Board order utterly fails to address the findings of fact and conclusions of law proposed by the parties or the reasons for rejecting such findings. As is noted in *St. Mary's Hospital v. State Health Planning and Development Agency, supra,* the requirement that the agency rule on such proposed findings and conclusions is mandatory and will be enforced by the courts.

Likewise, we are unable to discern from the Board order "a reasoned, articulate decision which sets forth the underlying evidentiary facts which lead the agency to its conclusion", as is required by syllabus point 2 of *Citizens Bank of Weirton v. West Virginia Board of Banking and Financial Institutions, supra.* It appears that the lack of such a reasoned, articulate decision flows, at least in part, from the rejection by the Board of Medicine of the hearing examiner's recommended conclusion of law allowing the admission and consideration of the testimony of Dr. Modi's experts who were not physicians currently licensed to practice medicine in one of the United States. The Board argued below and argues here that W.Va.Code § 55–7B–7 [7] is applicable to disciplinary proceedings for physicians and, therefore, testimony

offered in Dr. Modi's behalf by experts not licensed to practice medicine in one of the United States could not be considered by the hearing examiner or the Board. The hearing examiner disagreed, and so do we.

West Virginia Code § 55–7B–1, *et seq.,* relates to tort actions against health care providers, including physicians, not to disciplinary proceedings before the Board of Medicine.[8] West Virginia Code § 55–7B–7 requires, among other limiting factors, that expert testimony in "medical professional liability cases by the plaintiff" be elicited only from experts with a "current license to practice medicine in one of the states of the United States". A medical professional liability action is defined as an action for damages in tort or contract. W.Va.Code § 55–7B–2(d). It is clear that a disciplinary proceeding by the Board of Medicine is not such an action. Moreover, the continued vitality of W.Va.Code § 55–7B–7 even in tort or contract actions is doubtful in light of this Court's holding in *Mayhorn v. Logan Medical Foundation,* 193 W.Va. 42, 454 S.E.2d 87 (1994), that Rule 702 of the *West Virginia Rules of Evidence,* rather than W.Va.Code § 55–7B–7, is the paramount authority for determining whether or not an expert is qualified to give an opinion. Accordingly, the Board of Medicine erroneously refused to consider, for whatever its probative value,[9]

7. West Virginia Code § 55–7B–7 reads as follows:

The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court. Such expert testimony may only be admitted in evidence if the foundation, therefor, is first laid establishing that: (a) The opinion is actually held by the expert witness; (b) the opinion can be testified to with reasonable medical probability; (c) such expert witness possesses professional knowledge and expertise coupled with knowledge of the applicable standard of care to which his or her expert opinion testimony is addressed; (d) such expert maintains a current license to practice medicine in one of the states of the United States; and (e) such expert is engaged or qualified in the same or substantially similar medical field as the defendant health care provider.

8. A single reference to the regulation and discipline of health care providers, including physi-

cians, is found in the introductory section of Article 7B, (W.Va.Code § 55–7B–1), a statement of legislative findings and purpose. It is noted that a partial revision of the "West Virginia Medical Practice Act" (W.Va.Code § 30–3–1, *et seq.*) was accomplished in the same act of the Legislature by which W.Va.Code § 55–7B–1, *et seq.,* was enacted. (1986 Acts, ch. 106). However, no legislative intent can be discerned from the entirety of Chapter 106 to effect any limitation on the nature of expert testimony in physician discipline cases other than that provided by general law and the rules of evidence to the extent applicable to such proceedings.

9. Rule 702 of the *West Virginia Rules of Evidence* provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

the otherwise admissible testimony of experts supportive of Dr. Modi's assertion that depossession therapy is a recognized form of treatment and is not experimental. That error of law subjects the Board's findings on those two issues to scrutiny by this Court and the circuit court and requires that the conclusions of the Board based on those findings be set aside and that the sanctions imposed by reason of those conclusions be vacated.

We do not conclude that depossession therapy is or is not an acceptable form of care that would be employed by a reasonable, prudent physician in the same circumstances as those faced by Dr. Modi. We conclude only that the Board's findings in that regard are flawed by the mistake of law just described. We conclude also that we are confronted with the kind of agency ruling involving scientific data which the courts should not attempt to evaluate until such time as the agency presents a proper order making appropriate findings of fact and conclusions of law as is required by syllabus point 2 of *Citizens Bank of Weirton v. West Virginia Board of Banking and Financial Institutions, supra.* On the present record, it appears that an adequate *prima facie* case that Dr. Modi experimented on a human subject without obtaining the written informed consent required by W.Va.Code § 30–3–14(c)(14) was established by the evidence.[10] However, the decision on that issue is also flawed by the failure of the Board to give any consideration to the evidence adduced from Dr. Modi's experts and the failure of the Board to make appropriate findings of fact and conclusions of law; in addition, as discussed later in this opinion, the Board's determina-

tion of what may constitute compliance with the informed consent requirement deserves further careful review. Under the circumstances, the circuit court was correct in reversing the decision of the Board. However, this Court believes that the circuit court should have remanded the case to the Board for further consideration and for the making of appropriate findings of fact and conclusions of law.

■ The principles enunciated in syllabus points 2 and 3 of *Citizens Bank of Weirton v. West Virginia Board of Banking and Financial Institutions, supra,* quoted above, are especially applicable to cases where the administrative agency has utilized the services of a hearing examiner and determines that it should amend the findings or conclusions recommended by the examiner. Where an administrative agency has conducted a contested hearing through a hearing examiner and determines that it should amend the findings of fact or conclusions of law recommended by the hearing examiner, a reasoned, articulate statement of the reasons for the amended findings of fact or conclusions of law adopted by the agency is essential to the validity of those findings or conclusions and to their ready acceptance by reviewing courts. Such is particularly the case where the agency is making its decision based on economic or scientific data within the presumed expertise of the agency or where the agency has not heard or received the underlying evidence from which it is drawing conclusions different from those of the hearing examiner.

■ The Board complains further that the circuit court made no determination

---

The report of the hearing examiner adequately demonstrates the admissibility of the subject testimony under this standard, subject, as noted above, to the reasonable discretion of the hearing examiner and the Board to accord to it such weight as may be deemed appropriate.

10. There was conflicting evidence on whether depossession therapy is experimental by the accepted medical standards in the community. Dr. Modi adduced evidence suggesting that it was not. On the other hand, the Board adduced the testimony of Dr. Louis W. Tinnin, a psychiatrist and associate professor of psychiatry at West Virginia University School of Medicine, which proceeded as follows:

Q: Let me ask you this, Dr. Tinnin, if you have formed an opinion regarding whether the use of depossession therapy by the accepted standards of medical practice in the community constitutes experimentation on human subjects?

A: I believe that it does constitute experimentation.

Additionally, the evidence indisputably shows that Dr. Modi failed to obtain the *written* consent of Mr. Abbott before engaging in dispossession therapy, even though she did orally discuss the therapy with him and even though he did apparently orally consent to it.

that the substantial rights of Dr. Modi have been prejudiced by the Board order in this proceeding, relying on the requirement contained in W.Va.Code § 29A–5–4 that a circuit court reviewing an administrative order may act to reverse or modify an administrative agency only if the substantial rights of a party are prejudiced. In this case the contention is without merit. It is self-evident that the determinations by the Board that Dr. Modi is unqualified to practice medicine without certain limitations and that Dr. Modi should be publicly reprimanded, fined, required to undergo certain education not required of all physicians in her field and subjected to other special requirements, substantially affect her rights. We have previously determined that a license to practice a recognized profession is a valuable property right. *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953). Limitations on the enjoyment of that property right, coupled with a public reprimand and fine, imposed by a disciplinary body as in this case, clearly prejudice substantial rights of the holder of that property right and justify careful scrutiny by reviewing courts of the proceedings resulting in such action.

We now address the requirement of the Board order that Dr. Modi prepare and have approved by the Board of Medicine a form of written consent to be signed by patients undergoing depossession therapy. As we understand the record, it is contemplated that the form to be prepared and approved will include both the statement of consent to be signed by the patient and a full description of the potential "risks" and benefits envisioned by the practitioner as a result of the use of depossession therapy. We also have reviewed carefully the discussions contained in the report of the hearing examiner and in the circuit court order concluding that "no written consent form is necessary". We can not discern from the proceedings below exactly what the hearing examiner and the circuit court intended by these comments, especially in light of the express requirement of W.Va. Code § 30–3–14(c)(14) that any therapy constituting experimentation on human subjects must be preceded by "full, informed and written consent". Both the hearing examiner and the circuit court cite and rely on *Cross*

*v. Trapp*, 170 W.Va. 459, 294 S.E.2d 446 (1982), and *Adams v. El–Bash*, 175 W.Va. 781, 338 S.E.2d 381 (1985), and the presence in those cases of procedures which invade the human body, suggesting that the case here is different by reason of depossession therapy being a non-invasive procedure. However, the hearing examiner nevertheless found that Dr. Modi has violated the requirement of obtaining a written, signed consent for an experimental procedure while the circuit court appears to have reached an opposite conclusion. The Board excised from its order the hearing examiner's statement that no written consent form is necessary while retaining the ultimate conclusion that Dr. Modi improperly failed to obtain a written consent from Mr. Abbott for an experimental treatment, depossession therapy. The Board offered no explanation for its action by which we might be enlightened. Again, the absence of a reasoned, articulate decision by the Board prevents a full understanding why and how the Board's judgment differed from that of its hearing examiner on this critical issue. Since the matter is to be remanded to the Board for further consideration, we offer the following guidance with respect to the proper contents and form of a "full, informed and written consent".

As previously noted, by reason of our determination that the Board's exclusion of the testimony of Dr. Modi's experts was error, the issue of whether depossession therapy is an acceptable form of treatment and the issue of whether depossession therapy is experimental must now be fully reconsidered, with full and fair attention given to the previously excluded expert testimony. Upon such reconsideration, if it is found that depossession therapy is experimental, not withstanding its non-invasive nature, then careful consideration must be given to whether the writing signed by the patient about to undergo depossession therapy must contain on its face a written description of the potential risks and benefits of such therapy. We do not now express an opinion on that question, deferring, as we should, to the expertise presumed to be inherent in an administrative agency created to deal with such complex issues.

It does appear that the Board of Medicine failed to consider fully the implications of a requirement that the written consent form contain the panoply of information that might be considered to be necessary to a full, informed consent and perhaps failed to consider fully how the wide variety of patients likely to undergo an "experimental" procedure in the future might be best be brought to a suitable appreciation of the anticipated risks and benefits of a particular experimental procedure. Mindful that the resolution of such difficult questions involves complex issues of patient care and treatment which go far beyond the question of "depossession therapy", we leave the proper determination of the contents of the *written* consent form for consideration on remand. Having in mind the rapid advances that have been made in medical science in recent years, we caution that the determination could have a significant impact on what might be considered "experimental" procedures in the future and, absent careful consideration, may markedly expand the legal requirements for "informed consent". At this time, we defer to the administrative agency created to consider those issues on behalf of the medical profession. Given the wide ranging implications of such a determination, it may be appropriate for the Board of Medicine to address this matter by issuance of a regulation rather than by dealing with it in the confined circumstances of a contested administrative proceeding.

 Next, we address the requirement of the Board that Dr. Modi submit to

any insurance carrier for a patient undergoing depossession therapy a copy of the previously approved informed consent form signed by the subject patient. From the record, we glean that the Board of Medicine, having disapproved of the therapy as an acceptable form of treatment, having rejected Dr. Modi's experts contrary to the hearing examiner's advice and contrary to law, and having declared depossession therapy experimental, wished to prevent practitioners of the therapy from being paid by insurance carriers for the therapy. However, we also note from the record that the Board of Medicine did not undertake to prohibit Dr. Modi from using the therapy; rather the Board specified certain education and the preparation of the consent forms just discussed, thereby at least implicitly acknowledging the right of Dr. Modi to utilize the procedure in her practice. The court below found the Board's requirement that the consent form be submitted to an insurance carrier arbitrary. We agree. West Virginia Code § 30-3-14(i) sets forth the sanctions which may be imposed by the Board of Medicine upon a physician. After reviewing the statutory language, this Court cannot conclude that the Legislature has in any manner authorized the Board of Medicine to regulate or intervene in the manner directed by the Board order in the process by which physicians bill insurers for treatment.[11]

Finally, the Board complains that the reversal and vacation of the order of the Board of Medicine was clearly wrong as not in the

---

11. West Virginia Code § 30-3-14(i) provides:

(i) Whenever it finds any person unqualified because of any of the grounds set forth in subsection (c) of this section, the board may enter an order imposing one or more of the following:

(1) Deny his application for a license or other authorization to practice medicine and surgery or podiatry;

(2) Administer a public reprimand;

(3) Suspend, limit or restrict his license or other authorization to practice medicine and surgery or podiatry for not more than five years, including limiting the practice of such person to, or by the exclusion of, one or more areas of practice, including limitations on practice privileges;

(4) Revoke his license or other authorization to practice medicine and surgery or podiatry or to prescribe or dispense controlled substances;

(5) Require him to submit to care, counseling or treatment designated by the board as a condition for initial or continued licensure or renewal of licensure or other authorization to practice medicine and surgery or podiatry;

(6) Require him to participate in a program of education prescribed by the board;

(7) Require him to practice under the direction of a physician or podiatrist designated by the board for a specified period of time; and

(8) Assess a civil fine of not less than one thousand dollars nor more than ten thousand dollars.

public interest.[12] As we have noted in this opinion, the court below had ample reason to reverse the Board of Medicine. However, we have disapproved the vacation of the Board order in this case without further proceedings. Specifically, we have addressed the necessity that certain issues be reconsidered and have determined that at least one of the sanctions imposed on Dr. Modi is inappropriate. It may also appear upon reconsideration of the issues as directed here that one or more of the remaining sanctions are also inappropriate.

For the reasons stated, the judgment of the Circuit Court of Ohio County is affirmed in part and reversed in part. This case is remanded for further proceedings consistent with this opinion. Upon remand, the West Virginia Board of Medicine shall undertake such reconsideration of the issues as may be appropriate and render in any subsequent order a reasoned, articulate decision, accompanied by appropriate findings of fact and conclusions of law.

Affirmed in part; reversed in part; and remanded with directions.

RECHT, J., deeming himself disqualified, did not participate in the consideration and decision of this case.

WORKMAN, J., concurs and reserves the right to file a concurring opinion.

WORKMAN, Justice, concurring:

Justice Albright has written what is in many respects an excellent opinion. Perhaps the most important contribution the opinion makes to the law is its clear enunciation that when the Board of Medicine departs from its hearing examiner's findings of fact and conclusions of law, it must craft an order that gives a reasoned, articulate statement of its reasons.[1]

It is inarguable that the manner in which the Board's order was fashioned made it almost impossible to discern their reasoning. As a result, I am unable to conclude from that order, as did the majority, that the Board was arbitrary and capricious on the merits; but I agree with the majority that the matter should be remanded so the Board might have an opportunity to craft a reasoned, articulate order for us to review.

However, several points of clarification need to be made.

First, it should be emphasized that the majority opinion in no way ratified depossession therapy as a valid treatment recognized by reasonable, prudent physicians in the same specialty as being an accepted treatment.

Second, the majority concludes that the Board of Medicine "erroneously refused to consider, for whatever its probative value, the otherwise admissible testimony of experts supportive of Dr. Modi's assertion that depossession therapy is a recognized form of treatment and is not experimental." (Footnote omitted). In arriving at this conclusion, the majority correctly states that we have recently declared that Rule 702 of the West Virginia Rules of Evidence is the paramount authority governing the issue of the admissibility of expert testimony. *See Mayhorn v.*

12. Appellants assign as error the grant by the Court below of a preliminary injunction or stay, *ex parte.* We do not address that assignment of error. We consider it moot.

1. Syllabus point five of the majority opinion gives the Board a broader scope of review with regard to findings of fact than has been accorded other administrative agencies. Generally, "[e]videntiary findings made [by a hearing examiner] at an administrative hearing should not be reversed unless they are clearly wrong." *Randolph County Bd. of Educ. v. Scalia,* 182 W.Va. 289, 292, 387 S.E.2d 524, 527 (1989); *see generally* Syl.Pt. 5, *Frymier–Halloran v. Paige,* 193 W.Va. 687, 458 S.E.2d 780 (1995); Syl.Pt. 3, *Butcher v. Gilmer County Bd. of Educ.,* 189 W.Va. 253, 429 S.E.2d 903 (1993); Syl., *West Virginia Dep't of Health v.*

*West Virginia Civil Serv. Comm'n,* 178 W.Va. 237, 358 S.E.2d 798 (1987); Syl.Pt. 2, *Vosberg v. Civil Serv. Comm'n,* 166 W.Va. 488, 275 S.E.2d 640 (1981). However, 11 West Virginia Code of State Rules § 11–3–13.2 (1994) apparently confers more latitude to the Board in its review of a hearing examiner's findings of fact. That rule provides, in pertinent part, that "[t]he hearing examiner shall submit written findings of fact and conclusions of law to the Board pursuant to West Virginia code section three, article five, chapter twenty-nine-a, and the Board may adopt, modify or reject such findings of fact and conclusions of law." *Id.; see Berlow v. West Virginia Bd. of Medicine,* 193 W.Va. 666, 458 S.E.2d 469 (1995).

*Logan Medical Found.,* 193 W.Va. 42, 454 S.E.2d 87 (1994). However, the Board's order is silent on whether they reversed the hearing examiner on the issue of the admissibility of the questionable experts, or whether they simply chose not to give any credence to their "expert" opinions. On remand, this should be clarified. The Board should at least have an opportunity to make a clear conclusion on this issue before this Court rules as a matter of law (as the majority has) that the testimony in question was admissible under Rule 702.

Third, the majority finds the reasoning of the Board in determining the treatment in question to be experimental "flawed by the failure of the Board to give any consideration to the evidence adduced from Dr. Modi's experts and the failure of the Board to make appropriate findings of fact and conclusions of law[.]" Here, however, the Board did not reverse the hearing examiner. The hearing examiner did admit and consider the testimony of Dr. Modi's experts, yet concluded that the treatment at issue constituted experimental therapy. The Board agreed.

Thus, it is difficult to see why the majority reversed on this segment of the Board's order, and even more difficult to understand why the majority directs that the entire issue of whether the treatment is experimental be re-opened and re-determined. Rather the majority should have been guided by the following well-established principle which we have consistently used in the context of other administrative appeals:

> '[A] reviewing court must evaluate the record of the agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion on the same facts. (Citation omitted.)'

*CDS, Inc. v. Camper,* 190 W.Va. 390, 392, 438 S.E.2d 570, 572 (1993) (quoting *Frank's Shoe Store v. West Virginia Human Rights Comm'n,* 179 W.Va. 53, 56, 365 S.E.2d 251, 254 (1986)) (alteration not in original); *accord* Syl.Pt. 1, *Morris Memorial Convalescent Nursing Home, Inc. v. West Virginia Human Rights Comm'n,* 189 W.Va. 314, 431 S.E.2d 353 (1993) (quoting Syl.Pt. 1, *West Virginia Human Rights Comm'n v. United Transp. Union, Local No. 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981)) (" 'West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties.' ").

Applying the above-mentioned concept to the present case, it becomes apparent that the hearing examiner listened to witnesses' testimony on both sides of the issue concerning whether depossession therapy is experimental in nature before evaluating that evidence and finding that the treatment was experimental. Moreover, the Board had the opportunity to review the substantial evidence presented to the hearing examiner in upholding the hearing examiner's finding. Consequently, said findings should be sustained by this Court, since the findings are supported by substantial evidence. By directing the Board to re-examine this issue, the majority fails to uphold the precise principle it has established for reviewing courts to utilize in cases where the findings are unquestionably supported by substantial evidence. *See id.* This clearly does not constitute the kind of deference we previously said should be shown under the law to the expertise of both the hearing examiner and the Board below. *See* Syl. Pt. 3, *Citizens Bank of Weirton v. West Virginia Bd. of Banking and Fin. Insts.,* 160 W.Va. 220, 233 S.E.2d 719 (1977).

Fourth, the majority itself expresses lack of understanding as to why the hearing examiner and the circuit court concluded that no *written* consent was necessary, in light of *W.Va.Code* 30–3–14(c)(14), which expressly requires "full, informed and *written consent." Id.* (emphasis added). Yet the majority goes on to criticize the Board for offering no explanation for its action "by which we might be enlightened." Here it seems rather obvious that the Board looked at the statute and followed it.

Fifth, I must respond to the gratuitous "guidance" offered by the majority with respect to the proper contents and form of a full, informed and written consent. The ma-

**246**

jority acknowledges that resolution of the issue of the content of such a consent involves complex issues of patient care and treatment, yet suggests that the Board might better deal with this matter by the issuance of a regulation rather than in a contested administrative proceeding. The majority's own reasoning seems, however, to bode against such an approach. Given the rapid advances in medicine in recent years, the complexity of individual medical questions, and the obvious tenor of the majority (with which I concur) that medicine must be at least willing to consider alternative, even experimental, therapeutic approaches in determining what is and is not acceptable treatment, the creation of a regulation that would effectively resolve the issue of what constitutes a full informed consent in every context would be an almost impossible task.

Lastly, I address the majority's conclusion that the Board arbitrarily imposed the requirement that Dr. Modi submit to any insurance carrier for a patient undergoing depossession therapy a copy of the previously approved informed consent form signed by the subject patient. While I agree with the majority's conclusion, I want to clarify that, on remand, if it once again is determined that Dr. Modi's treatment is experimental, and not one recognized by reasonable, responsible physicians in the same specialty, then the Board might be well within its authority to determine that billing an insurance company for psychotherapy could constitute a violation West Virginia Code § 30–3–14(c)(5), for which Dr. Modi could be disciplined. Specifically, West Virginia Code § 30–3–14(c)(5) provides, in pertinent part, that

> "[t]he board . . . may discipline a physician . . . licensed or otherwise lawfully practicing in this state who, after a hearing, has been adjudged by the board as unqualified due to any of the following reasons: . . . (5) Making or filing a report that the person knows to be false [ (i.e. filing a claim for psychotherapy after a legal determination has been made that depossession therapy is experimental and does not fall within the accepted definition of psychotherapy) ] . . . .

*Id.* Thus, the Board could discipline Dr. Modi for such conduct; however, the sanction for such discipline must fall within the provisions of West Virginia Code § 30–3–

14(i). *See supra* note 11 of majority opinion. Simply stated, directing the method in which a physician must bill an insurance carrier is not an available sanction under West Virginia Code § 30–3–14(i), where the Board determines that a violation of West Virginia Code § 30–3–14(c)(5) occurred.

Consequently, while I disagree with some of the majority's reasoning and at least one of their primary bases for reversal (relating to the issue of experimental treatment and written consent), I concur in the opinion because I believe the Board failed to give a reasoned, articulate statement of the reasons for its amended findings and conclusions, and it should be required to do so.