# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**North Central Distributors, Inc.,**
**Petitioner Below, Petitioner**

**FILED**

November 8, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-0844** (Kanawha County 12-AA-11)

**Ronald M. Moats, West Virginia**
**Alcohol Beverage Control Commissioner;**
**Labatt USA Operating Company, LLC,**
**Respondents Below, Respondents**


## MEMORANDUM DECISION

Petitioner North Central Distributors, Inc. ("NCDI"), by counsel Jeffrey M. Wakefield, Danielle Waltz Swann, and Amanda J. Gardner, appeals the orders of the Circuit Court of Kanawha County, entered June 8, 2012, which affirmed the final order of the Alcohol Beverage and Control Commissioner (the "Commissioner"). The Commissioner terminated an agreement that gave NCDI the exclusive distribution rights to certain products produced by Respondent Labatt USA Operating Co., LLC ("Labatt"). Respondent Commissioner, by counsel  Harden C. Scragg, Jr., filed a response. Respondent Labatt, by counsel David Allen Barnette and Vivian H. Basdekis, also filed a response. Petitioner filed a single reply to both responses.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner NCDI sells wine, beer, and non-intoxicating beverages in West Virginia. Respondent Labatt is a brewer and supplier of alcoholic beverages licensed to do business in West Virginia.

### 2002 Agreement

On April 30, 2002, the Commissioner approved a distribution agreement between NCDI and Labatt which gave NCDI exclusive rights to distribute certain Labatt products in designated counties.

**2006 Agreement**

Following a corporate merger, Labatt became InBev USA, LLC. Thereafter NCDI and Labatt executed a second distribution agreement on April 25, 2006. The parties agree that the 2006 Agreement was in effect during all times relevant to the case at bar. In regard to payment, the 2006 Agreement provided that: (1) Labatt would invoice NCDI; (2) the invoice would be available online; (3) NCDI's payment was due and payable on the date Labatt's shipment was received by NCDI; and (4) payment was to be made in cash by electronic funds transfer. In regard to termination, the 2006 Agreement provided that Labatt could terminate the Agreement immediately and without written notice for "[NCDI's] failure to pay any account or sum when due and upon demand by [Labatt] for such payment. . . ." In regard to "just cause" for termination, the 2006 Agreement provided that

> [t]his agreement was negotiated in good faith, its provisions impose essential and reasonable requirements upon [Labatt] and [NCDI] . . . the failure of [NCDI] to comply with the provisions of the Agreement shall constitute a material breach and . . . "just cause,". . . within the meaning of the Law for the cancellation or termination of the Agreement.

**Payment Issues**

Labatt claims the following: In August, October, and December of 2010, and in January of 2011, Labatt delivered goods to NCDI. Labatt attempted to procure payment by electronic funds transfer from NCDI's account the day after each delivery in accordance with the 2006 agreement. However, in all four instances, the electronic funds transfer could not be completed due to insufficient funds in NCDI's account. Thereafter, on February 18, 2011, Labatt resent the four unpaid invoices totaling $62,634.96, but NCDI failed to pay them the following day.

In defense of its failure to make timely payments, NCDI claims that it was Labatt's usual and customary business practice to give advance notice of an electronic funds transfer before the transfer was made; and where a shipment contained damaged goods, to correct the invoice to show a credit for the damaged goods before payment was due. NCDI also asserts that some of the goods it received from Labatt in August and October of 2010 were damaged, but that it did not receive a revised invoice from Labatt for August or October 2010 showing a credit for the damaged goods.

On February 21, 2011, Labatt sent NCDI a "breach of distribution agreement" letter via certified mail demanding payment and threatening termination of the parties' distribution agreement, but the letter was returned as "undeliverable."

On March 4, 2011, Labatt sent NCDI a second breach of distribution agreement letter that included a demand for payment by March 18, 2011. NCDI received the letter the following day. On March 21, 2011, after its demand letter went unheeded, Labatt notified the Commissioner of its intent to terminate its 2002 Agreement with NCDI. By letter dated March 20, 2011, the Commissioner determined that the ninety-day waiting period required by West Virginia Code §

11-16-21(b)(2) to terminate such an agreement would begin to run on March 23, 2011, and end on June 21, 2011.

NCDI claims that it spoke with a Labatt representative in April of 2011 and thereafter, in an effort to resolve the matter, made $30,000 available to cover the August and October of 2010 invoices, minus the outstanding credit, but Labatt did not withdraw the $30,000.

By letter dated June 15, 2011, NCDI protested the termination. On June 20, 2011, NCDI claimed that it had past due invoices in the amount of $32,073.72.

On August 2, 2011, NCDI authorized a wire transfer to Labatt in the amount of $84,222 for payment of all outstanding invoices.

On September 21, 2011, Labatt sent a check to NCI in the amount of $1,057.66 as a credit for petitioner's receipt of damaged product.

**Administrative Hearings**

On August 30, 2011, a hearing examiner denied NCDI's motion to dismiss the proceeding as a matter of law.

At a September 27, 2011, hearing before the hearing examiner, NCDI's president testified that, where there was a discrepancy in an invoice, the parties' established business practice was to have NCDI withhold payment until the discrepancy could be resolved. Upon resolution, Labatt would then issue NCDI a new invoice and a new electronic funds transfer notice. NCDI then argued that (1) the termination of the 2002 Agreement, did not terminate the 2006 Agreement; and (2) pursuant to West Virginia Code § 11-16-21(b)(2) and 176 W.Va. C.S.R. 1.2(b)(2)(g), the termination of the distribution agreement was without due regard for the equities and without just cause.

The hearing examiner found that (1) Labatt's notice of termination for the 2002 Agreement notified NCDI of Labatt's intent to terminate the 2006 Agreement for failure to timely pay for merchandise; and (2) the relevant portions of the two agreements were substantially similar. In regard to NCDI's defense (that its withholding of payment to Labatt was customary between the parties), the hearing examiner said:

> [a]lthough [NCDI] admits a failure to timely pay Labatt for merchandise received, [NCDI] argues that such failures were justified by usual and customary practice between the parties, by Labatt's failure to properly adjust or credit invoices, and/or by Labatt's failure to provide an accurate statement of accounts. The hearing examiner rejects [NCDI's] argument that it acted reasonably and justifiably by withholding and delaying timely payments for merchandise received for a period of approximately six months because the custom and practice of business between the parties required advance notices of electronic fund[s] transfers and/or revised invoices prior to any payment of invoices.

The hearing examiner then concluded that NCDI had materially breached the distribution agreement by failing to timely pay invoices and, as such, Labatt had "just cause"—or a compelling business reason—to terminate the agreement. The hearing commissioner also found that the termination was not without due regard for the equities of the parties to the agreement.

On December 21, 2011, the Commissioner adopted the hearing examiner's recommendation, in total, and terminated NCDI's distribution agreement with Labatt.

**NCDI's Appeal to the Circuit Court**

On January 20, 2012, NCDI appealed the Commissioner's final order to the circuit court. Following a hearing, the circuit court entered two orders on June 8, 2012, that affirmed that Commissioner's final order. The first order, entitled "Order: Affirming Administrative Final Decision and Order" was time stamped at 10:40 a.m. The second order, entitled "Respondent Labatt USA Operating Company, LLC's Proposed Findings of Fact and Conclusions of Law" was time stamped at 10:41 a.m.

NCDI now appeals the circuit court's orders to this Court. In Syllabus Point 1 of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), we said:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

*Id.* at 590, 474 S.E.2d 520. Additionally,

> findings of fact made by an administrative agency will not be disturbed on appeal unless such findings are contrary to the evidence or based on a mistake of law. In other words, the findings must be clearly wrong to warrant judicial interference. . . . Accordingly, absent a mistake of law, findings of fact by an administrative agency supported by substantial evidence should not be disturbed on appeal.

*Webb v. West Virginia Bd. of Medicine*, 212 W.Va. 149, 155, 569 S.E.2d 225, 231 (2002) quoting *Modi v. West Virginia Bd. of Medicine*, 195 W.Va. 230, 239, 465 S.E.2d 230, 239 (1995)).

Petitioner first argues that the circuit court erred in entering two orders to resolve his appeal. Petitioner claims that the orders are so different that they cannot be read together.

We disagree with petitioner's assessment that the orders cannot be read together or that they differ in their findings and conclusions. Although one order provides significantly more detail than the other, both orders apply the same standard of review and employ the same reasoning to find that the Commissioner's termination of the distribution agreement comported with West Virginia Code § 11-16-21(b)(2).

We also note that petitioner elected to address only the first order ("Order: Affirming Administrative Final Decision and Order") in its appellate brief even though it was in possession of both orders for approximately four months before it filed that brief. Further, there is no evidence in the record on appeal that during those four months petitioner sought relief by filing a motion pursuant to Rule 60 of the Rules of Civil Procedure to clarify the circuit court's intent in entering two orders. This Court has said, "'[a] litigant may not silently acquiesce to an alleged error . . . and then raise that error as a reason for reversal on appeal.' Syl. Pt. 1, in part, *Maples v. W. Va. Dep't of Commerce, Div. of Parks and Recreation*, 197 W.Va. 318, 475 S.E.2d 410 (1996)." Syl. Pt. 4, *PNGI Charles Town Gaming, LLC v. Reynolds*, 229 W.Va. 123, 727 S.E.2d 799 (2011). As such, we review petitioner's following assignments of error in light of both orders, read together, as a whole.

Petitioner next argues that the circuit court applied the wrong standard of review to the statutory interpretation of West Virginia Code § 11-16-21(b)(2). That section, found in the Intoxicating Beer Act, West Virginia Code §§ 11-16-1 to -29, governs the termination of distribution agreements between brewers and distributors and provides as follows:

> It shall also be unlawful . . . (2) For any brewer or brewpub or distributor, or any officer, agent or representative of any brewer or brewpub or distributor, to cancel, *terminate* or rescind *without due regard for the equities of such brewer or brewpub or distributor and without just cause*, any franchise [or distribution] agreement . . . The cancellation, termination or rescission of any such franchise [or distribution] agreement shall not become effective for at least ninety days after written notice of such cancellation, termination or rescission has been served on the affected party and the Commissioner by certified mail, return receipt requested. . . .

(Emphasis added.) Petitioner claims that the circuit court found that the issue before it was whether "the administrative decision [was] founded on evidence in the record as a whole, or [was] contrary to the evidence." Petitioner maintains that the circuit court's finding was in error, and that the correct standard was whether the Commissioner's termination of the distribution agreement was "without due regard for the equities" and "without just cause" pursuant to West Virginia Code § 11-16-21(b)(2). NCDI claims that the Commissioner failed to find that that termination was not "without due regard for the equities," and that the circuit court erred in failing to correct the Commissioner's error. NCDI also argues that the circuit court failed to address Labatt's usual and customary business practice of giving advance notice of an electronic funds transfer, and of correcting an invoice to show a credit before payment was due where petitioner received damaged goods,.

The circuit court applied the correct standard of review, found in West Virginia Code § 29A-5-4(g)), and then concluded that

> the Commissioner's *Final Order* in this matter is supported by the substantial evidence; it is neither contrary to the evidence nor based on a mistake of law; it is neither fundamentally unfair nor arbitrary. Accordingly, petitioner

5

fails to establish any relevant basis for reversing the ABCA Commissioner's final order.

As for West Virginia Code § 11-16-21(b)(2), the circuit court specifically found that the Commissioner's termination of the distribution agreement "was made with due regard for the equities and with just cause."

As for "due regard for the equities" the circuit court affirmed the hearing examiner's rejection of NCDI's argument that it acted reasonably and justifiably by withholding payments for six months based on the parties' customary and usual business practices. The circuit court found that, when Labatt sent notice of its intent to terminate the distribution agreement, (1) NCDI owed Labatt about $62,635, and (2) NCDI eventually paid Labatt $84,222 for all outstanding invoices. We note that when this $84,222 was paid, NCDI was given a credit of only $1,058, for damaged goods. The circuit court concluded that "Labatt's decision to terminate the agreement was based on legitimate business interests, including the ability to timely collect substantial amounts owned on account and the ability to protect its business interests in West Virginia," and as such was not without due regard for the equities. In light of the limited scope and nature of administrative judicial review, and based on the substantial evidence in the record, we cannot say the circuit court was clearly wrong in concluding that the termination of the distribution agreement was without "due regard for the equities" of the distributor.

The circuit court also affirmed the Commissioner's finding that Labatt had "just cause" to terminate the distribution agreement where the terms of the distribution agreement stated that (1) timely payment was an essential and reasonable requirement of the distribution agreement; (2) failure to timely pay constituted a "material breach" of the agreement and "just cause" to terminate it; and (3) "failure to pay" authorized Labatt to terminate the agreement automatically and "without prior notice." Given that the distribution agreement clearly defines "just cause," for a termination, and in light of the deferential standard on appeal, we cannot say that the circuit court erred in affirming the Commissioner's finding that there was "just cause" to terminate the distribution agreement.

Petitioner's third and final argument is that the circuit court erred in affirming the Commissioner's termination of the parties' distribution agreement where Labatt's notice of termination addressed the parties' 2002 agreement, and not the 2006 Agreement which was the only agreement in effect at the time the notice was filed.

The circuit court found that Labatt's written notice of termination identified the breaching conduct, referenced the contractual remedy, and defined the opportunity to cure. Such notice met or exceeded that set forth in West Virginia Code § 11-16-21(b)(2), that requires only that the affected party receive "written notice of such cancellation, termination or rescission." Further NCDI cites to no evidence in the record showing that it relied to its detriment on, or was prejudiced by, the incorrect date. Any prejudice was unlikely given that the relevant clauses in the 2002 and the 2006 agreements were virtually identical. Therefore, we cannot say the circuit court erred in concluding that NCDI received adequate written notice of Labatt's intent to terminate its agreement with NCDI.

6

For the foregoing reasons, we affirm.

Affirmed.


**ISSUED:**  November 8, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Margaret L. Workman