506 S.E.2d 830 (1998)
203 W.Va. 234
STATE ex rel. Deleno H. WEBB, M.D., Petitioner below, Appellee,
v.
WEST VIRGINIA BOARD OF MEDICINE, Respondent below, Appellant (Two Cases).
Nos. 24640, 24641.
Supreme Court of Appeals of West Virginia.
Submitted June 2, 1998.
Decided July 16, 1998.
Concurring and Dissenting Opinion of Justice Workman July 20, 1998.
*831 Rudolph L. DiTrapano, Esq., Sean P. McGinley, Esq., DiTrapano & Jackson Charleston, West Virginia, Attorneys for Appellee.
*832 Deborah Lewis Rodecker, Esq., West Virginia Board of Medicine, Charleston, West Virginia, Attorney for Appellant.
STARCHER, Justice:
In the instant case we uphold in part and reverse in part a decision of the Circuit Court of Kanawha County. We determine that the West Virginia State Board of Medicine can go forward with one disciplinary proceeding against a psychiatrist charging him with having a sexual relationship with a patient; in another proceeding, charging the doctor with the same conduct with another patient, we determine that a complainant's delay in making a complaint bars further proceedings.

I.

Facts and Background
The appellant, the West Virginia Board of Medicine ("the Board"), established pursuant to W.Va.Code, 30-3-1, et seq., filed charges against the appellee, Dr. Deleno H. Webb[1] ("Dr. Webb"), a Huntington, West Virginia psychiatrist, in two separate complaintsone filed in November 1993, the other in August 1994.
The first complaint alleged that Dr. Webb engaged in sexual intercourse with his patient, Ms. D.[2], beginning in 1975, when Ms. D. was 17, and continuing through 1985. The second complaint alleged that on one occasion in 1979, Dr. Webb engaged in sexual intercourse with a second patient, Ms. M.
Dr. Webb applied for a writ of prohibition against the Board in the Circuit Court of Kanawha County in both matters. On September 16, 1994, the circuit court ordered the Board to consider "what, if any, impact the doctrine of laches will have on the allegations" against Dr. Webb. The circuit court also ordered that "the Board shall assume that the doctrine of laches applies and make initial determinations in both cases as to what prejudice, if any, has occurred and whether these proceedings should be barred as a result." The circuit court's order further declared that any misconduct in which Dr. Webb engaged prior to the 1980 enactment of W.Va.Code, 30-3-1 et seq. should be governed by the disciplinary provisions of the law in place at the time of the alleged misconduct.
Accordingly, the Board excised its complaints and notices to meet the circuit court's directive. By order dated January 18, 1995, the Board scheduled a hearing before a Board-designated hearing examiner so the Board could "consider the evidence and make initial determinations as to what prejudice, if any, has occurred, and whether further proceedings should be barred as a result."
At this "laches" hearing, Webb presented one witness, an investigator, who testified as to difficulties in gaining access to witnesses and other information. The Board presented as witnesses its executive director, Ronald D. Walton; Nancy Hill, Ms. D.'s attorney; and John Adams, M.D., Ms. D.'s then-current treating psychiatrist. The Board also had testimony and evidence from a related civil proceeding against Dr. Webb filed by Ms. D.
After the filing of legal memoranda, the Board's hearing examiner, applying the doctrine of laches, recommended that the Board should be permitted to go forward in the D. matter, and that the Board should not be permitted to go forward in the M. matter.
In May 1995, the Board entered an order accepting the hearing examiner's recommendation as to the D. matter, and modifying the recommendation in the M. matter. The Board asserted in the order that it had carried out the circuit court's directive, even though the Board believed that the circuit court's direction to assume that the doctrine of laches applied constituted an error of law.
The Board next scheduled a hearing on the merits of the two complaints. Dr. Webb again applied to the Circuit Court of Kanawha County for a writ of prohibition against the Board's holding a hearing on the merits *833 of the charges. With no ruling forthcoming from the circuit court, in August 1996, the Board applied to this Court for the issuance of a writ of mandamus requiring the circuit court to rule on Dr. Webb's request for a writ of prohibition. We issued the writ. In April 1997, the circuit court ruled that the Board was not permitted to hold a hearing on the merits of the complaints against Dr. Webb.
From this ruling by the Circuit Court of Kanawha County, the Board appeals.

II.

Standard of Review
"The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of prohibition is de novo." Syllabus Point 1, Martin v. West Virginia Div. of Labor Contractor Licensing Bd., 199 W.Va. 613, 486 S.E.2d 782 (W.Va. 1997).

III.

Discussion

A.

Is the Doctrine of Laches Applicable in Board of Medicine Proceedings?
This Court's customary brief formulation of the doctrine of laches was stated in Province v. Province, 196 W.Va. 473, 483, 473 S.E.2d 894, 904 (1996): "The elements of laches consist of (1) unreasonable delay and (2) prejudice."
We have also stated:
Laches is an equitable defense, and its application depends upon the particular facts of each case. There are some general principles, however, which a court should be mindful of when determining whether the doctrine of laches is applicable. For instance, "[m]ere delay will not bar relief in equity on the ground of laches. `Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right.'"
State ex rel. West Virginia Dept. of Health and Human Resources, Child Advocate Office, on Behalf of Jason Gavin S. by Diann E.S. v. Carl Lee H., 196 W.Va. 369, 374, 472 S.E.2d 815, 820 (1996) (citations omitted).
A substantial number of jurisdictions have held or assumed for decisional purposes that some form of the doctrine of laches may be applicable in disciplinary proceedings against physicians. Annotation, Applicability of statute of limitations or doctrine of laches to revoke or suspend license to practice medicine, 51 A.L.R.4th 1147.
The argument that there should be a place for the doctrine of laches in physician discipline cases rests on fundamental fairness. The privilege (W.Va.Code, 30-3-1 [1980]) to practice medicine is a valuable one. To have that privilege threatened in a proceeding where one is severely prejudiced by an unreasonable delay not of one's own making could be very unfair.
However, it is also important to recognize that physician discipline proceedings are not the sort of traditional, common-law adversarial civil proceedings in which doctrines like laches evolved, to balance the rights and interests of purely private parties. In a physician discipline proceeding, the interests of the state, the general public and the medical profession are the primary concern.
Thus, there may be circumstances in a physician discipline proceeding when even a substantial degree of prejudice to a physician that is caused by an unreasonable delay not of the physician's making might nevertheless be outweighed by the strong interests of the state, the public and the profession in fully addressing allegations of serious professional misconductso as to tip the equitable balance in favor of continuing with a proceeding.
For the foregoing reasons, we hold that the doctrine of laches may be applicable in proceedings by and before the West Virginia Board of Medicine pursuant to W.Va. Code, 30-3-1, et seq. However, in applying the doctrine of laches in such proceedings, the interests of the state, the public and the medical profession must be given substantial consideration, and the doctrine should be applied narrowly and conservatively and in *834 such a fashion as to not unfairly impair the Board's duty and responsibility to supervise and regulate the medical profession for the protection of the profession and the public.[3]
To the extent that the holding in Syllabus Point 7 of State v. Sponaugle, 45 W.Va. 415, 32 S.E. 283 (W.Va.1898) (laches is not imputable to the state) suggests that as a state-sponsored entity, the Board is not subject to laches, the holding of that case is hereby modified.

B.

The Application of the Doctrine of Laches in the Instant Case
As previously stated, the circuit court's first order instructed the Board to consider the application of the doctrine of laches to the proceedings involving Dr. Webb. While the circuit court's second order prohibiting further proceedings questioned whether the Board had applied the doctrine in good faith, the record shows that the Board and its hearing examiner both applied the doctrinealthough the Board did so under protest.
Both the examiner and the Board concluded that laches should not bar proceeding on the D. matter. However, the examiner and the Board differed on the M. matter. The examiner recommended that laches should bar proceedings on the M. matter; the Board disagreed and ruled that laches should not be a bar.
The circuit court concluded that the Board had erred as a matter of law in its application of laches to both matters, and granted a writ of prohibition barring further proceedings on both. It is this determination by the circuit court that we review, de novo.
The hearing examiner's recommendation in the D. matter was based, inter alia, upon the examiner's findings, adopted by the Board, that (1) any delay had been proven to be at least in part Dr. Webb's responsibility and therefore was not unreasonable; and (2) that Dr. Webb had not proven that he had been prejudiced by any delay.
If upheld, these findings are dispositive on the laches issue in the D. matter. Our review of the record as a whole shows that there was substantialindeed overwhelmingevidence that supported these findings.[4]
The Board thus permissibly found that laches did not bar going forward with the D. matter, and the circuit court erred in effectively reversing that finding by granting a writ of prohibition against further proceedings in that matter.
In the M. matter, the hearing examiner found that Dr. Webb had shown that (1) there was an unexplained and unreasonable delay; and (2) that there was prejudice to Dr. Webb from such a delay.
If these findings by the examiner control, then laches might bar going forward in *835 the M. matter, as the essential prerequisites of unreasonable delay and prejudice are present. However, the Board modified these recommended findings by the ALJ, as it is entitled to do. "Although the Board is not required to accept automatically the recommendations of a hearing examiner, the Board must present `a reasoned, articulate decision [for not doing so].'" Berlow v. West Virginia Bd. of Medicine, 193 W.Va. 666, 670, 458 S.E.2d 469, 473 (1995).
In the instant case, we cannot accept the Board's generic conclusion that there was no delay-related prejudice to Dr. Webb in the M. matter. As the hearing examiner said, "[a] single alleged incident, said to occur some 13 years ago, is much more difficult to prove in the negative. The recall of events does blur over time."
Additionally, the examiner recommended that laches should bar further proceedings in the M. matter, not just because of prejudice, but also because the Board did not present any reason or explanation, other than speculation, for the delay by M. in making a complaint to the Board. That is, there was no evidence showing that the complainant's unexplained delay in the M. matter was reasonable.
The Board was thus acting without support in the record in modifying the examiner's finding of prejudice resulting from an unexplained delay of over 13 years in the M. matter. We conclude therefore that the examiner's findings should not have been modified by the Board in the M. matter.
It follows that if significant prejudice and unreasonable delay in bringing a complaint to the Board were established in the M. matter, laches could be applicable. However, that is not the end of the inquiry. Neither the hearing examiner or the Board explicitly balanced the public and the profession's interests against the prejudice to Dr. Webb resulting from an unexplained and unreasonable delay in the M. matter.
We understand the Board's reluctance to allow delay in the presentation of a complaint to bar the Board from performing its duties to the public and the profession. And as we have noted, the mere existence of prejudice to a physician from such an unreasonable delay, while enough to invoke the possible application of the doctrine of laches, does not end the inquiry. A further balancing must occur, involving the interests of the public and the profession as well as those of the physician.
Although this Court could remand this issue to the Board for such a balancing, this case has clearly been too long already in getting to a hearing on the merits. We conclude that the hearing examiner implicitly performed such a balancing in determining that laches should bar further proceedings in the M. matter. The Board, having failed to offer any reason for the complainant's delay in the M. matter, is in a poor position to challenge the equity of the examiner's recommendation.
Consequently, we uphold the examiner's determination, ratified by the circuit court, that laches prohibits further Board proceedings on the M. matter.

IV.

Conclusion
The circuit court erred in granting a writ of prohibition that effectively reversed the Board's ruling that laches did not bar going forward with the D. matter and prohibited further proceedings in that matter. The circuit court did not err in granting a writ of prohibition preventing further proceedings in the M. matter. This case must be remanded to the Board for full proceedings before the Board on the merits of the D. matter.[5]
Affirmed, in part; reversed, in part; and remanded.
WORKMAN, J., dissents, in part, and concurs, in part.
*836 MAYNARD, J., deeming himself disqualified, did not participate in the decision in this case.
GARY JOHNSON, Judge, siting by special assignment.
WORKMAN, Justice, concurring, in part, and dissenting, in part:

(Filed July 20, 1998)
I concur with the majority that the circuit court erroneously dismissed the Board of Medicine's complaint against Dr. Webb in connection with the charge involving Ms. D., but dissent in its affirmation of the circuit court's dismissal of the Board's charge involving Ms. M. Furthermore, while I do not disagree with the majority's only new syllabus point, which provides that the doctrine of laches may be applicable to proceedings by and before the West Virginia Board of Medicine, I object strenuously to its application where there was no delay on the part of the Board. Application of laches where there is no delay by the party against whom it is asserted is a substantial departure from existing law; yet the majority makes such departure without even placing that new law into a new syllabus point.[1]
In its discussion of the doctrine of laches, the majority is silent with respect to an important element of the affirmative defense of laches, one that is embedded into all of our law on this concept. As we said in State ex rel. Smith v. Abbot, 187 W.Va. 261, 418 S.E.2d 575 (1992), laches is an equitable, affirmative defense that is "sustainable only on proof of two elements: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." 187 W.Va. at 264, 418 S.E.2d at 578 (citing Mogavero v. McLucas, 543 F.2d 1081 (4th Cir.1976)) (emphasis added).
In the instant case, although there was a substantial time delay between the charged conduct and the patient complaints, there is absolutely nothing in the record to demonstrate any delay on the part of the Board of Medicine, which is the complaining party here and the party against whom the lower court and the majority have permitted the assertion of the defense of laches.
Unfortunately, the lower court and the majority of this Court have treated this issue as if it is a claim by the complainant against the doctor. If that were the case, the doctrine of laches might very well apply.[2] Here, however, the Board of Medicine represents interests far more substantial than the rights of the two complainants. The Board's duty is to protect the general public from physicians who behave improperly or unethically toward their patients. West Virginia Code § 30-3-1 (1980), concerning the Board of Medicine, states, in part: "As a matter of public policy, it is necessary to protect the public interest through enactment of this article and to regulate the granting of [medical] privileges and their use."
Particularly where the Board is not the entity causing the delay, laches should not be asserted against the Board. In Ohio State Board of Pharmacy v. Frantz, 51 Ohio St.3d 143, 555 N.E.2d 630 (Ohio 1990), even where the Board of Pharmacy did not act as expeditiously as possible upon receiving the complaint, *837 the Ohio court held that laches was not a "defense to a suit by the government to enforce a public right or to protect a public interest." 555 N.E.2d at 633. "To impute laches to the government would be to erroneously impede it in the exercise of its duty to enforce the law and protect the public interest." Id. See Perez v. Missouri State Board of Registration for the Healing Arts, 803 S.W.2d 160 (Mo.App.1991); Lyman v. Walls, 660 S.W.2d 759 (Mo.App.1983).
In Larocca v. State Board of Registration for the Healing Arts, 897 S.W.2d 37 (Mo.App. 1995), the Missouri Court held that a physician could invoke the doctrine of laches only if he could prove that the Board had knowledge of the facts giving rise to its proceedings to revoke his license and it delayed the proceedings to the extent that he suffered legal detriment. 897 S.W.2d at 45. In Wang v. Board of Registration in Medicine, 405 Mass. 15, 537 N.E.2d 1216 (Mass.1989), the Supreme Judicial Court of Massachusetts held that the Medical Board was not barred from instituting its disciplinary proceedings against a physician pursuant to the doctrine of laches based upon delay since laches was not applicable due to the fact that a public right was being enforced by the Board. 537 N.E.2d at 1220.
If we are to depart from the traditional principle holding that laches is not imputable against the State, we should do so under narrowly tailored circumstances. While jurisdictions have differed in their approaches to this issue, I believe the soundest reasoning involves a preliminary determination of the cause of the delay. If attributable to the Board, the laches argument may be forwarded; if attributable to the patient, however, with no lack of diligence on the part of the Board after receiving the complaint, laches may not be asserted against the Board. The duty of the Board of Medicine is, after all, not merely the advancement of the rights of private individuals, but the protection of the general public interest against incompetent and unethical doctors.
NOTES
[1] In the circuit court's order in the proceedings below, Dr. Webb's first name was apparently misspelled "Delano."
[2] Because this case involves sensitive matters, we use the initials of the last names of the two women who made complaints to the Board of Medicine.
[3] In Board of Medicine proceedings, there are at least two junctures where we perceive that laches may be applicable: (1) when there is an issue of the timeliness of the making of a complaint to the Board; and (2) where there is an issue of the timeliness of actions taken by the Board.
[4] The record contains Dr. Webb's deposition testimony in a civil suit brought by Ms. D. Dr. Webb admitted to having sex with Ms. D. for over 6 years, beginning when she was a depressed teenager with severe psychiatric problems requiring medication and hospitalization, and an apparent history of familial abuse.

Dr. Webb claimed that he began having sex with Ms. D., not in 1975 when she first became his patient, but in 1977, after he "transferred" her to another doctor in the same practice group. However, the record shows that over a several-year-long period after the alleged transfer, Dr. Webb prescribed medicine for Ms. D., gave orders at hospitals regarding her care, and otherwise took responsibility for her medical care. During this period of time, Dr. Webb admitted to having sex with Ms. D.
Given this strong prima facie evidence of misconduct, in the form of an admission by Dr. Webb, the examiner was clearly justified in finding that any prejudice from delay in the D. case was de minimis. See generally, Pons v. Ohio State Medical Board, 66 Ohio St.3d 619, 614 N.E.2d 748 (1993), for a case involving similar alleged physician misconduct.
As to Dr. Webb's role in causing any delay, Dr. Adams, Ms. D.'s treating physician in 1992 (when Ms. D. made her complaint to the Board about Dr. Webb), testified how Dr. Webb used his physician status to exercise psychological dominance in his relationship with Ms. D., and explained how this dominance precluded Ms. D. from fully appreciating both the wrongfulness of Dr. Webb's conduct and the need to report Dr. Webb's conduct to protect other vulnerable patients.
[5] We add that further judicial intervention in and delay of the proceedings before the Board would be particularly inappropriate, given the substantial amount of time that the proceedings we review in the instant opinion have consumed.
[1] It is also of great concern that the majority, in the body of its opinion, modifies an existing point in State v. Sponaugle, 45 W.Va. 415, 32 S.E. 283 (1898) without placing such modification into a new syllabus point. It is important to the coherent development of the case law that such modifications to existing law be reflected in syllabus points.
[2] It seems especially ironic, however, to seize upon delay on the part of the patients in bringing the charges forth when they involve sexual misconduct on the part of a psychiatrist treating individuals with severe depression and emotional problems, one a juvenile and one actually suicidal. Who is in a better position to adversely impact the judgment and free will of such individuals than one in whose professional charge these emotional problems are placed? An element of the equitable defense of laches dictates that the defendant may not obtain the benefit of the defense where his own actions have created the inequity. Thus, where an individual asserting the doctrine of laches has caused or contributed to the delay, laches is inapplicable. See C.R. v. J.G., 306 N.J.Super. 214, 703 A.2d 385 (N.J.Super.1997) (Party cannot have benefit of laches if its own actions have caused inequity or if it has contributed to or caused delay); Baylie v. Swift and Co., 283 Ill.App.3d 421, 219 Ill.Dec. 94, 670 N.E.2d 772 (Ill.App.1996) (Adverse party may not take advantage of delay to which he has contributed, for purposes of determining whether laches bars action.)